# EX PARTE: IN THE MATTER OF THE STATE OF OKLAHOMA, BY CHARLES N. HASKELL, GOVERNOR, ETC., PETITIONER.

No. 9, Original. Argued April 4, 5, 1910; ordered for reargument before full bench May 31, 1910; reargued February 23, 1911.—Decided April 3, 1911.

Prohibition is an extraordinary writ which will issue against a court which is acting clearly without any jurisdiction whatever, and where there is no other remedy; but where there is another legal remedy, by appeal or otherwise, or where the question of jurisdiction is doubtful or depends on matters outside the record, the granting or refusal of the writ is discretionary. *In re Rice,* 155 U. S. 396.

Mandamus cannot perform the office of an appeal or writ of error and is only granted as a general rule where there is no other adequate remedy. *Re Atlantic City R. R. Co.,* 164 U. S. 633.

Where in an action to enjoin state officers from enforcing a state statute against articles in interstate commerce, the interlocutory injunction can be corrected in the Circuit Court of Appeals, and there is a direct appeal on the question of jurisdiction to this court after final decree, an adequate remedy is provided and the writ of prohibition could only be granted on the ground of absolute right and this court in this case declines to allow it to issue.

There is an identity of the principles which govern mandamus and prohibition and the latter writ is also refused in this case as there is a remedy by review in this court after final judgment. *Ex parte Nebraska*, 209 U. S. 436.

The facts are stated in the opinion.

*Mr. Joseph W. Bailey* and *Mr. Fred S. Caldwell* for the State of Oklahoma:

The injunction suits are, in effect, against the State of Oklahoma, and barred by the Eleventh Amendment. Such suits attempt to control the acts of the State by acting directly upon its public officers and controlling their official conduct. While this would not be the case if the state laws under which the state officers were assuming to act were unconstitutional, it is so, as the laws in question are valid laws, the constitutionality of which cannot be challenged. They do not attempt to subject intoxicating liquors, which are the legitimate subject of interstate commerce, to the exercise of the police power of the State, until after arrival within the State, within the meaning of the Wilson Act.

The police power is not involved at all. There is no dispute touching its operations or limitations. But an inferior Federal court has seen fit to take exception to the judicial power of a State being invoked in such instances.

As to the difference between "the police power" and "the judicial power" of a State, see *Slaughter House Cases*, 16 Wall. 36, 62; *Munn* v. *Illinios*, 94 U. S. 113, 124, *Mugler* v. *Kansas*, 123 U. S. 623, 660; *Walker* v. *Maxwell*, 68 App. Div. 196; *S. C.*, 74 N. Y. Supp. 94.

As to the status of the liquor affected by the injunctions, see *State* v. *Intoxicating Liquors*, 71 Atl. Rep. (Me.) 758; *Rhodes* v. *Iowa*, 170 U. S. 412; *Vance* v. *Vandercook Co.*, 170 U. S. 439; *American Express Co.* v. *Iowa*, 196 U. S. 13; *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17; *Heyman* v. *Southern Ry. Co.*, 203 U. S. 270; *State* v. *18 Casks of Beer* (Okla.), 104 Pac. Rep. 1093.

As their acts are supported by a valid state law, such officers are the agents of the State, their acts are the acts of the State and a suit to enjoin is, in effect, a suit against the State. *Osborn* v. *United States Bank*, 9 Wheat. 738, 846; *Ex parte Young*, 209 U. S. 123, 142; and see also *Poindexter* v. *Greenhow*, 114 U. S. 270; *In re Ayers*, 123 U. S. 443; *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 9; *Tindal* v. *Wesley*, 167 U. S. 204, 219; *Fitts* v. *McGhee*, 172 U. S. 516, 528; *Prout* v. *Starr*, 188 U. S. 537, 542; *Davis & Farnum Mfg. Co.* v. *Los Angeles*, 189 U. S. 207, 217; *Dobbins* v. *Los Angeles*, 195 U. S. 223, 241.

All search and seizure proceedings prosecuted by the State of Oklahoma under §§ 4184, 4185 of the 1909 Compiled Laws are actions *in rem*, brought under a valid state law in courts of competent jurisdiction, and, therefore, the search and seizure warrants issued therein are in no sense void, and fully protect the officer or officers executing the same. *Dwinnels* v. *Boynton*, 3 Allen (Mass.), 310; *Humes* v. *Taber*, 1 R. I. 464; *Walls* v. *Farnham*, 2 Hun, 325; *Sanford* v. *Nichols*, 7 Am. Dec. 152; *Small* v. *Orne*, 79 Maine, 81; *State* v. *McNally*, 34 Maine, 210; *Melcher* v. *Scruggs*, 72 Missouri, 408; *Boston & Maine R. R. Co.* v. *Small*, 85 Maine, 624.

The effect of the injunctions complained of by the petitioner herein is to stay proceedings in the courts of a State in violation of § 720, Rev. Stat. *American Exp. Co.* v. *Mullins*, 212 U. S. 311; *Arbuckle* v. *Blackburn*, 51 C. C. A. 122; *S. C.*, 133 Fed. Rep. 616; *Freeman* v. *Howe*, 24 How. 451; *City Bank* v. *Skelton*, 5 Fed. Cas. No. 2739; *Daly*

v. *Sheriff*, 6 Fed. Cas. No. 3553; *Fisk* v. *Union Pacific Ry. Co.*, 9 Fed. Cas. No. 4827; *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 96 U. S. 340; *Hemsley* v. *Meyers*, 45 Fed. Rep. 283; *Whitney* v. *Wilder*, 54 Fed. Rep. 554; *American Assn.* v. *Hurst*, 59 Fed. Rep. 1; *Fenwick Hall Co.* v. *Old Saybrook*, 66 Fed. Rep. 389; *In re Chetwood*, 165 U. S. 460; *Harkrader* v. *Wadley*, 172 U. S. 148; *Cœur D'Alene Ry. Co.* v. *Spaulding*, 35 C. C. A. 295; *Mills* v. *Prov. Life & Trust Co.*, 100 Fed. Rep. 344; *Ex parte Young*, 209 U. S. 123; *Farmers' L. & T. Co.* v. *Lake St. &c. Ry. Co.*, 177 U. S. 51.

The cases at bar are proper ones for the issuance of writs of prohibition.

A writ of prohibition is to prevent the exercise of jurisdiction by a judicial tribunal over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance. It is a proper remedy where the court having jurisdiction assumes to exercise an unlawful power. It is a remedy provided by the common law against the encroachment of jurisdiction. *Mayo* v. *James* (Va.), 12 Gratt. 17, 23; *People* v. *Judge* (Mich.), 2 N. W. Rep. 919; *State* v. *Ward*, 70 Minnesota, 58; *Planters' Ins. Co.* v. *Cramer*, 47 Mississippi, 200, 202; *Johnston* v. *Hunter*, 50 W. Va. 52; *State* v. *Commissioners*, 1 Mill (S. Car.), 55, 57; *Washburn* v. *Phillips*, 43 Massachusetts (2 Metc.), 296; *Maurer* v. *Mitchell*, 53 California, 289; *People* v. *Commissioners*, 54 California, 404; *Cameron* v. *Kenfield*, 57 California, 550, 553; *State* v. *Young*, 29 Minnesota, 447, 523; *People* v. *Fitzgerald*, 73 App. Div. 339; *State* v. *Evans*, 88 Wisconsin, 255.

*Mr. Joseph S. Graydon* and *Mr. Lawrence Maxwell*, with whom *Mr. E. G. McAdams* was on the brief, for respondents and as *amici curiæ*, in opposition to issuing the writ of prohibition:

The writ will not issue unless it clearly appears that

the inferior court is about to exceed its jurisdiction. *In re Fassett*, 142 U. S. 479, 486; *Re Engles*, 146 U. S. 357; *Re Morrison*, 147 U. S. 14; *Re Rice*, 155 U. S. 396; *Re N. Y. and Porto Rico S. S. Co.*, 155 U. S. 523; *Smith* v. *Whitney*, 116 U. S. 167, 176.

Want of jurisdiction must not appear from facts dehors the record. *Ex parte Easton*, 95 U. S. 68, 77; *Re Cooper*, 143 U. S. 472; *Re Fassett*, 142 U. S. 479, 484; *Re The Huguley Mfg. Co.*, 184 U. S. 297; Taylor, "Jurisdiction and Procedure of the Supreme Court of the United States," §§ 334, 335.

The suits were not against the State, but only against state officials, to prevent them from enforcing against the plaintiffs a state statute which, whether valid or not on its face, was invalid as to plaintiffs under the state of facts set forth in the bills on which the Circuit Court acted. The injunctions were therefore properly granted and certainly were not beyond the jurisdiction of the court. *Ex parte Young*, 209 U. S. 123; *Western Union Tel. Co.* v. *Andrews*, 216 U. S. 165.

Granting the writ will enable local officers to interfere with the operation of the revenue laws and other laws of the United States. See § 3449, Rev. Stat., which is part of the Int. Rev. Act of July 13, 1866, c. 184, 14 Stat. 156; *United States* v. *132 Packages of Liquor*, 76 Fed. Rep. 367; *United States* v. *Campe*, 89 Fed. Rep. 697; *United States* v. *Twenty Boxes of Corn Liquor*, 123 Fed. Rep. 135.

The Federal court having first assumed jurisdiction, will retain it to the exclusion of the state courts and officers as to subsequent proceedings. *Hanley* v. *Kansas City Southern Ry. Co.*, 187 U. S. 617; *Adams Express Co.* v. *Kentucky*, 206 U. S. 135; *American Express Co.* v. *Kentucky*, 206 U. S. 139.

The Federal court, also, in a proper case may take jurisdiction over the parties and determine for itself whether seizures so made are legal, and after the Federal

court has taken jurisdiction it will by injunction or other appropriate means prevent the state court from thereafter seizing or interfering with persons or things involved in the Federal case. *Sculley* v. *Bird,* 209 U. S. 481; *Vance* v. *Vandercook (No. 1),* 170 U. S. 438; *Ex parte Young,* 209 U. S. 123; *Western Union Tel. Co.* v. *Andrews,* 216 U. S. 165.

In no case has this court awarded prohibition in proceedings similar to these. This is not a case in which the court has original jurisdiction. *In re Massachusetts, Petitioner,* 197 U. S. 482. The writ does not serve the purpose of a writ of error or certiorari, and is rarely granted where there is another legal remedy. *Smith* v. *Whitney,* 116 U. S. 167.

*Mr. S. T. Bledsoe,* with whom *Mr. A. B. Browne, Mr. Alexander Britton, Mr. Evans Browne* and *Mr. J. B. Cottingham* were on the brief, for respondents, in opposition to relief sought:

This being a controversy between a State and a citizen thereof, this court is without jurisdiction. Art. III, § 2, Const. of U. S.; *California* v. *Southern Pacific Ry. Co.,* 157 U. S. 229, 258.

No such peculiar character attaches to intoxicating liquors as authorizes the exercise of the judicial power of the States. This court has not, in dealing with the subject of intoxicating liquors, drawn any distinction between police and judicial powers. *Rhodes* v. *Iowa,* 170 U. S. 412, 426.

The law of the State of Oklahoma cannot be made to apply to an interstate shipment before the arrival and delivery of such shipment without causing it to be repugnant to the Constitution of the United States. Cases *supra* and *Vance* v. *Vandercook,* 170 U. S. 438, 455; *Adams Express Co.* v. *Kentucky,* 206 U. S. 129, 135; *Swedes* v. *State,* 1 Oklahoma Crim. Rep. 245; *State* v. *18 Casks of Beer,* 104 Pac. Rep. 1093, 1100; see § 4753, Wilson's Stat. Okla., 1903; *McCord* v. *State,* 101 Pac. Rep. 280.

The proceedings in the Circuit Court of the United States for the Western District of Oklahoma are not against the State of Oklahoma. The Oklahoma Dispensary-Prohibition Act if at all applicable to interstate shipments before their arrival at destination and delivery to the consignee, is unconstitutional. Cases *supra* and *Heyman* v. *Southern Railway Co.*, 203 U. S. 275; *Leisy* v. *Hardin*, 135 U. S. 100; *Bowman* v. *Chicago & N. W. Ry. Co.*, 125 U. S. 465; *Scott* v. *Donald*, 165 U. S. 107; *Louisville & Nashville Ry. Co.* v. *Cook Brewing Co.*, 172 Fed. Rep. 117; *Davis Hotel Co.* v. *Platt*, 172 Fed. Rep. 775; *Crescent Liquor Co.* v. *Platt*, 148 Fed. Rep. 894; *High* v. *State*, 101 Pac. Rep. 115.

An injunction may be granted to protect the property rights of a person against the enforcement of an unconstitutional state statute, and may be addressed to the persons whose duty it is to enforce the same. *Ex parte Young*, 209 U. S. 23; *Davis* v. *Gray*, 16 Wall. 203, 220; *Virginia Coupon Cases*, 114 U. S. 270, 296; *United States* v. *Lee*, 106 U. S. 196; *Tindall* v. *Wesley*, 167 U. S. 204; *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 9; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362; *Union Pacific Co.* v. *Mason City Co.*, 199 U. S. 160; *Smyth* v. *Ames*, 169 U. S. 466; *Prout* v. *Starr*, 188 U. S. 537; *McNeill* v. *Southern Railway Co.*, 202 U. S. 543, 559; *Mississippi R. R. Comm.* v. *Illinois*, 203 U. S. 335, 340; *Kansas Nat. Gas Co.* v. *Haskell*, 172 Pac. Rep. 545; *Sculley* v. *Bird*, 209 U. S. 481, 487; *Ill. Cent. Ry. Co.* v. *Adams*, 180 U. S. 28, 35.

The effect of the injunction complained of is not to stay proceedings in the state courts in violation of § 720, Rev. Stat. *Norton* v. *Shelby County*, 118 U. S. 425; *Ex parte Young*, 209 U. S. 123; 2 High on Injunctions, 4th ed., § 1308; *Tex. & Pac. Ry. Co.* v. *Kuteman*, 54 Fed. Rep. 547; *In re Beine*, 42 Fed. Rep. 545; *Schandler Bottling Co.* v. *Welch*, 42 Fed. Rep. 561.

An adequate remedy exists by appeal and the extraor-
dinary relief sought by prohibition should for that rea-
son be denied. *In re Rice, Petitioner,* 155 U. S. 402; *In re
N. Y. S. S. Co., Petitioner,* 155 U. S. 531; *In re Huguley
Mfg. Co.,* 184 U. S. 297.

The Oklahoma Dispensary-Prohibition Act in so far as
it provides for searches, seizures and judgment, without
any notice whatever, and in such a limited time, is vio-
lative of the Fourteenth Amendment. *Roller* v. *Holly,*
176 U. S. 398; *Fisher* v. *McGirr,* 67 Massachusetts, 1;
*United States* v. *Boyd,* 116 U. S. 616.

The railway company is not the keeper of the con-
science, nor the censor of the appetites or contracts of the
citizens of the State of Oklahoma.

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

On March 24, 1908, the legislature of Oklahoma enacted
a statute, known as the Billups Bill, providing for a state
agency for the dispensing of liquors under certain circum-
stances, but not for use as a beverage, and prohibiting gen-
erally the manufacture, sale, bartering, giving away or
otherwise furnishing liquor within the State. Session
Laws Oklahoma, 1907–1908, ch. 69, p. 605; §§ 4180 *et seq.*
Comp. Laws of 1909. Sections 5 and 6 of Art. 3 of the
statute, §§ 4184 and 4185 Comp. Laws of 1909, provide in
substance that any judge of a District or County Court or
justice of the peace, upon a showing of probable cause,
may issue search and seizure warrants directed to any
officer of the county to seize liquors under the circum-
stances therein mentioned, and provide for a hearing as
to whether such liquors are being unlawfully held, etc.
The statute also makes provision for the forfeiture of
liquors and other personal property employed in unlaw-
fully trafficking in liquors.

The State of Oklahoma, through its governor, is here complaining that "The Circuit Court of the United States for the Eastern District of Oklahoma and Ralph E. Campbell, the District Judge of said district, sitting as judge of said Circuit Court, have in direct violation of the Eleventh Amendment to the Constitution of the United States and contrary to and in direct violation of § 720 of the Revised Statutes of the United States, assumed jurisdiction" in nine suits in equity brought in said court, and the number of each case and the parties thereto are stated. The particular proceedings had in each case are not set out, but it is, in substance, alleged that in each the relief sought was the enjoining of the prosecution of search and seizure proceedings instituted under the statute above referred to in the courts of Oklahoma and the enjoining of the State "from prosecuting any action in its said courts, under and pursuant to said §§ 4184 and 4185, *supra*, of petitioner's said laws, against any intoxicating liquors, in all cases where it may become necessary to try and determine any one or more" of the issues set out in the margin.[1]

---

[1] (*a*) The issue as to whether or not the particular intoxicating liquor in question was, at the time of its seizure, a *bona fide* shipment made to a person within petitioner's borders from a place outside of petitioner's borders, which said shipment had not been delivered by the interstate carrier under the contract of interstate shipment to the consignee at the place of destination.

(*b*) The issue as to whether or not the particular intoxicating liquor in question had been shipped from a point outside of petitioner's borders to a place within petitioner's borders in violation of § 3449 of the Revised Statutes of the United States.

(*c*) The issue as to whether or not the particular intoxicating liquor in question had been shipped from a place outside of petitioner's borders to a place within petitioner's borders in violation of any one or more of §§ 238, 239, and 240 of the act of Congress of March 4, 1909 (35 Stat. L. 1136–7).

(*d*) The issue as to whether or not the particular intoxicating liquor in question, although shipped from a place outside of petitioner's borders to a place within petitioner's borders and in the possession of the

It is averred that the relief sought in the said equity suits has been granted and the State and its officials are wrongfully prevented from enforcing the statute, "and that the State of Oklahoma has suffered and is suffering great and irreparable injury, from which said petitioner has no adequate remedy at law," and "that said acts of said respondents constitute and are an unlawful and unwarranted interference with petitioner, the State of Oklahoma, in the exercise of its governmental functions and sovereign powers in connection with the enforcement of petitioner's said prohibition laws,  .  .  ."

In substance, it was prayed in the petition that the further prosecution of the suits and the enforcement of the various restraining orders and temporary injunctions entered therein should be prohibited, as well as any further interference with the prosecution in the state courts of search and seizure process under the law in question.

As a return to a rule to show cause respondent judge has filed an answer, containing copies of the file papers in the equity suits referred to in the petition. The following facts are taken from the showing thus made:

Prior to the fall of 1908, under the assumed authority of search warrants issued for alleged violations of the foregoing statute, numerous consignments from other States than Oklahoma to residents of Oklahoma of liquor had been taken from the cars or depots at stations within the State of Oklahoma of the Missouri, Kansas and Texas Railway Company, while such property was in the custody of the company, before the completion of the interstate transportation by delivery to the consignees. Alleging diversity of citizenship, and a continuous violation of

interstate carrier, undelivered under the contract of interstate shipment at the time the seizure was made, is "adulterated" or "misbranded" within the meaning of the act of Congress of June 30, 1906, chapter 3915, 34 Stat. L. 768, commonly known as the Pure Food and Drug Act.

rights protected by the Constitution of the United States, the unlawfulness of these seizures and the irreparable character of the injury done and likely to be occasioned by further threatened seizures, the railway company commenced, on September 9, 1908, the first of the equity suits referred to in the petition. Twelve persons were made defendants, as having been concerned either in the obtaining of the various search warrants and their service, or because in possession of property seized, or on account of advising and encouraging the commission of the alleged trespasses. A decree for the restoration of eighteen specified consignments, alleged to have been unlawfully seized, was prayed, as also an injunction against future seizures. A temporary restraining order was granted; and, ultimately, a stipulation was entered into for the return of the property seized, and for its redelivery to the defendants on the payment to them of its value in the event the litigation should terminate adversely to the railway company. On September 16, 1908, the temporary restraining order was, by agreement of the parties, continued in force until a time to be fixed by consent for the hearing of an application for a temporary injunction. No further proceedings were had in the case.

Four of the equity suits referred to in the petition— three filed December 17, 1909, and one on January 18, 1910—were afterwards commenced in the same court by the railway company. The defendants were several individuals alleged to have actively participated in the seizure at various stations on the line of the company's road, like in character to the seizure complained of in the prior suit. Such seizures were averred to have been made under the assumed authority of the prohibition statute heretofore referred to. In one of the suits so commenced on December 17, 1909, a stipulation was filed to the effect that the seizures complained of had been made by the defendants acting as constables and under the authority of a .

search warrant, a copy of which was attached. In each of the four cases, after hearing counsel for the respective parties, a temporary restraining order was granted, prohibiting future interference with interstate shipments before delivery to consignees, and ordering the restoration of the property alleged to have been seized, except that in one case, a portion of the seized property was ordered to be safely and securely kept by the defendants until the further order of the court. In each of the cases following the allowance of a temporary injunction a demurrer to the bill was filed alleging in substance that the court was without jurisdiction to hear and determine the controversy "and that the relief prayed for is sought in direct violation of the Seventh and Eleventh Amendments of the Constitution of the United States, and in direct violation of § 720 of the Revised Statutes of the United States;" and that the bill of complaint "is wholly without equity." These demurrers have not been passed upon.

In the interval between the commencement of the first and the last of the suits just referred to four dealers in liquors and consignors of shipments which had been taken from the custody of the railway company while in course of interstate transportation to consignees in Oklahoma, under the assumed authority of the statute in question, also commenced the other suits in equity referred to in the petition. The defendants in these suits, designated by their official titles, were the state dispensary agent and the sheriff, constables or other officials who had participated in the seizures complained of in the various bills of complaint, as also the person who held possession of the property. The prayer of each bill was for the allowance of temporary and perpetual injunctions restraining future seizures of liquors shipped by the complainant and consigned to *bona fide* consignees in Oklahoma by railroad until the interstate transportation had terminated by delivery of the property to the consignees. A temporary

restraining order was issued in each case. Thereafter, in all of these cases, a demurrer was filed to each bill upon the grounds which were made the basis of the demurrers filed in the cases commenced by the railway company, and upon the following additional ground: "That it appears from said complainants' bill of complaint that their business operations, which they seek to have protected by decree of this honorable court, are carried on and conducted in direct violation of the penal laws of the United States of America, to wit, in violation of §§ 238, 239 and 240 of an act of Congress of March 4, 1909. 35 Stat. 1136–7."

The temporary injunctions issued in the suits brought by the railway company were substantially alike and restrained the defendants and each of them, their agents and employés, "from entering the cars, depots or other premises of the complainant, Missouri, Kansas and Texas Railway Company, and from taking therefrom intoxicating liquors shipped from points outside of the State of Oklahoma to points and consigned to persons within the Eastern District of the State of Oklahoma, and that said defendants, and each of them, their agents and employés be restrained from in anywise interfering with complainant in its handling and delivery of such interstate shipments of intoxicating liquors and from inciting, aiding, abetting or advising other persons so to do." The defendants were also enjoined from taking any steps looking to the forfeiture of the seized property.

The temporary injunctions issued in the suits brought by the foreign liquor houses were also substantially alike and in each the defendants, their agents, etc., were "enjoined and restrained until further order of this court from seizing or causing to be seized, either directly or indirectly, or ordering or directing any person to seize any intoxicating liquors shipped by the complainant Thixton from the State of Kentucky to actual *bona fide* consignees within

the Eastern District of the State of Oklahoma, while the same is in the possession of the common carrier, and before the same have been delivered, either actually or constructively, to such consignees." In two of the cases commenced by shippers, however, the following proviso was inserted in the injunction order:

"Provided, however, that this order shall not apply to any liquors shipped in violation of Sec. 3449 of the Revised Statutes of the United States, or to liquors shipped in violation of Sections 238, 239 and 240, of the Act of Congress of March 4, 1909, 35 Stat. 1136–7, or to any such liquors which are adulterated or misbranded within the meaning of the Act of Congress of June 30, 1906, ch. 3915, 34 Stat. 768, commonly known as the Pure Food and Drug Act, or to any such liquors shipped in violation of any other Act of Congress."

In one of the shippers' cases the injunction order also contained a provision prohibiting action by the defendants looking to the forfeiture of any of the liquors referred to in the complaint as having been seized by such defendants.

This application for a writ of prohibition was made practically cotemporaneous with the filing of the various demurrers above referred to. In substance, the reasons which caused the respondent judge to assume jurisdiction over the causes and to award the relief against the defendants therein, of which the State now complains, are not only stated in the return, but are expounded in an opinion delivered in one of the cases which is made a part of the return. These reasons are, in substance, made manifest by two excerpts, one from the opinion referred to and the other from the return itself, as follows:

"Under the facts as stipulated in this case, the shipments seized were still in the hands of the carrier, were interstate commerce, and had not become subject to the laws of the State. If it be contended that in enacting the

search and seizure laws referred to the Legislature intended that they should apply to such interstate commerce, then the answer is that, to that extent, the law is invalid, because it is made to apply to a subject within the exclusive jurisdiction of Congress. If on the other hand it is contended that such was not the intention of the Legislature, then the state courts are exceeding the law in issuing such search and seizure warrants. They are in my judgment no protection to the officer who seeks by them to justify his acts thereunder, and to enjoin him from executing them is not a violation of section 720 of the Revised Statutes. The authority of the State does not attach to shipments of the character involved in this case until the delivery to the consignee.

\*    \*    \*    \*    \*    \*    \*    \*

"If these seizures are permitted, complainants will either have to abandon their property so seized, or defend a multiplicity of suits, the number of which will be determined only by the zeal of the enforcement officers in their interference with interstate commerce. As the record now stands, the complainants of course must eventually win in such suits, for upon a showing to the state court that the property seized was still interstate commerce, undelivered to the consignee, it would have to be ordered returned to the complainants. It is not conceived, however, that such a course presents that adequate legal remedy which precludes the action of a court of equity. Nor is it conceived that in granting the temporary injunctions complained of, respondent is violating the 11th amendment to the Constitution, or section 720 of the Revised Statutes of the United States, because the injunction may prevent one or more of the defendants from thereafter causing such warrants of search and seizure to issue, or from executing such warrants after issuance."

It is elaborately argued by counsel for the State, first,

that the injunction suits complained of were, in effect, directed against the State, and, therefore, were barred by the Eleventh Amendment; second, that the proceedings prosecuted under §§ 4184 and 4185 of the 1909 Compiled Laws of Oklahoma are actions *in rem*, brought under a valid state law, in courts of competent jurisdiction, and, therefore, the injunctions restraining the enforcement of the search warrants were, in substance and effect, injunctions staying proceedings in the courts of the State, in violation of § 720 of the Revised Statutes. And as supporting this last contention, it is argued "the effect of the injunctions here complained of is to prevent and prohibit the 'judicial power' of the State of Oklahoma being invoked, even by the State itself, for the purpose of judicially determining the *status* of any particular quantity of intoxicating liquor found within its borders, in so far as questions touching its *status* as interstate commerce are concerned."

Counsel who oppose the allowance of the writ urge numerous reasons why the application should be denied, in part as follows: Relief it is claimed should be refused because it is sought to review in one action the proceedings in different causes involving different parties and issues. Attention is called to the fact that in the first of the suits commenced by the railway company no jurisdictional objection was raised. It is argued that the bills of complaint filed in the various suits commenced by the railway company do not show on their face that the suits were against state officers or that injunctions were sought to stay proceedings in the state courts, and that in any event the primary purpose of the bills was to restrain future seizures of interstate shipments before delivery to the consignees. As to the suits brought by the four liquor houses, it is urged that § 720 of the Revised Statutes was not violated, as the relief granted was only against future seizures and the suits were against state officials to prevent

them from enforcing against the plaintiffs a state statute, which, whether valid or not on its face, was invalid as to plaintiffs under the state of facts set forth in the bills on which the Circuit Court acted. It is additionally urged that the granting of the writ would enable local officers to interfere with the operation of the revenue laws and other laws of the United States, as the State of Oklahoma claims the right upon any hearing which may be had in respect to the validity of seizures of the character of those under consideration to determine whether the particular shipments were made in violation of any statute of the United States, and although for such violations the property would be subject to be forfeited to the United States, yet if it is found by the state court that the property had been shipped in violation of a law of the United States the goods would be adjudged not to have been legitimate subjects of interstate commerce and would be forfeited to the State. Further, it is urged that continuous seizures of liquors in transit by state authorities for the purpose of ascertaining whether they are or may be obnoxious to the police laws of the State is in itself an unconstitutional burden placed upon interstate commerce, and decisions of this court are cited as supporting the proposition. In addition, it is insisted that the law in question has been construed by the Supreme Court of Oklahoma not to be applicable to interstate shipments of intoxicating liquors until their arrival at destination and delivery to the consignees, and because of such construction, it is urged, it clearly results that "any officer or person seeking to seize or cause to be seized intoxicating liquors under the provisions of said act, before their arrival at destination and delivery to consignee, acts entirely outside of and beyond the scope of said law and is a naked trespasser, and may be enjoined."

But we do not think we are called upon to test the accuracy of these, as well as other, conflicting contentions,

because we are of the opinion that consistently with the orderly course of judicial proceeding we may not pass upon them, since we cannot do so without disregarding the plain statutory provisions providing means for reviewing the action of the court which is complained of and which, if availed of, would afford complete and adequate remedy.

The principle under which the power to issue the extraordinary writ of prohibition may be exerted was thus stated in *In re Huguley Mfg. Co.*, 184 U. S. 297, 301:

"It is firmly established that where it appears that a court, whose action is sought to be prohibited, has clearly no jurisdiction of the cause originally, a party who has objected to the jurisdiction at the outset and has no other remedy, is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record, the granting or refusal of the writ is discretionary. *In re Rice*, 155 U. S. 396. And that the writ of mandamus cannot be used to perform the office of an appeal or writ of error, and is only granted as a general rule where there is no other adequate remedy. *In re Atlantic City Railroad Company*, 164 U. S. 633."

It will become apparent from even a merely superficial analysis that, consistently with the doctrine just referred to, the facts which we have stated afford no basis for the allowance of the writ of prohibition as prayed. This is obvious because, first, an adequate remedy was provided by law in each case, even before final judgment, for reviewing and correcting in the Circuit Court of Appeals any error committed by the court below in awarding interlocutory relief by injunction; second, because after final decree, if the cases so ultimated, adequate remedy existed at the election of the defendants to come directly to this court upon the question alone of the jurisdiction of the

court below as a Federal court over the respective causes; third, because even if these remedies were not resorted to and the cases had gone to final decrees against the defendants and they had chosen to appeal the whole case to the Circuit Court of Appeals, and that court had decided against them, there would be either a right in this court to review by appeal, or discretionary power, if it was deemed that the questions involved warranted such action, to bring the whole case up for review by the writ of certiorari. Bearing these considerations in mind it results that relief by the extraordinary remedy of prohibition, if here granted, could not possibly rest upon the ground that there was otherwise no adequate means of relief, but would have to be placed upon the assumption that there was a right to the writ, even although the party invoking it had declined to avail himself of the otherwise complete and adequate measures of relief which would have been afforded by following the orderly and regular course of judicial proceeding.

In view of the identity of the principles which govern the right to invoke the extraordinary remedy of mandamus to correct an unlawful assumption of jurisdiction, and those which control the power to issue the writ of prohibition for the same purpose, it was perhaps unnecessary to consider the subject from an original point of view, since the matter is settled by authority. Quite recently in *Ex parte Harding*, 219 U. S. 363, the whole subject was reviewed, and it was held that discretion to issue the writ of mandamus would not be exerted to review a question of jurisdiction where there was otherwise adequate remedy provided by statute for the review of errors in that respect asserted to have been committed by a trial court. Besides, a previous decision which was reviewed and reaffirmed in the *Harding Case* so completely controls the issue here presented as to leave no room for contention on the subject. The case is *Ex parte Nebraska*, 209

U. S. 436. That case was this. The State of Nebraska was one of the plaintiffs in a cause removed from a state court into a Circuit Court of the United States on the ground that there was a separable controversy between the other plaintiffs in the cause and the defendant. The Circuit Court, having denied a motion to remand, the State of Nebraska applied to this court for a writ of mandamus to compel the remanding of the cause, averring that it was plain from the record that it was the real and in substance the only party plaintiff in the removed cause. The application for the writ, however, was denied upon the ground that the order overruling the motion to remand was subject after final judgment to be reviewed by appeal, and therefore was not properly reviewable by the writ of mandamus.

*Rule discharged and prohibition denied.*