### NATIONAL BONDHOLDERS CORPORATION et al. v. McCLINTIC, Judge.

#### No. 4406.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1938.

Sidney C. Weinstein, of New York City, and Reuben Oppenheimer, of Baltimore, Md. (Ralph Wolf, of New York City, Thomas B. Jackson and Herman Bennett, both of Charleston, W. Va., Hays, Wolf, Kaufman & Schwabacher, of New York City, Brown, Jackson & Knight, of Charleston, W. Va., and Emory, Beeuwkes, Skeen & Oppenheimer, of Baltimore, Md., on the brief), for petitioners.

Robert S. Spilman, of Charleston, W. Va. (Hawthorne D. Battle, and Price,

Smith & Spilman, all of Charleston, W. Va., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

In this case the petitioners pray for a writ of mandamus to the Honorable George W. McClintic, United States District Judge for the Southern District of West Virginia, to vacate his order of October 11, 1938, staying the taking of the depositions of certain witnesses, notice for which had been given under rule 26 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The order was passed in consolidated cases pending in the District Court of the United States for the Southern District of West Virginia entitled National Bondholders Corporation and Union Series Eye Corporation, Plaintiffs, v. Charleston National Bank, Trustee. Upon the filing of the petition this court passed a show cause order, in reply to which the respondent has made a full return, and we have heard argument by counsel for the respective parties. From the papers submitted we learn the nature and history of the case in which the order was passed.

On December 29, 1936, the plaintiffs filed suit in equity against the Charleston National Bank as substituted Trustee under a trust indenture dated May 1, 1926, from the Union Mortgage Investment Company covering collateral to secure bonds to be issued by the Mortgage Company and guaranteed by the National Surety Company. The collateral consisted largely of first mortgage notes on real estate deposited with the trustee, and bonds having a total value of $1,564,000 were issued under the indenture which it is said places affirmative duties on the trustee to maintain the value of the collateral.

The plaintiffs in the case (National Bondholders Corporation and Union Series Eye Corporation) are corporations formed in pursuance of a general plan of reorganization promulgated by the New York Superintendent of Insurance for the liquidation of collateral securing bonds guaranteed by the National Surety Company. This reorganization plan was adopted by the United States District Court for Delaware in proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, for the reorganization of the Union Mortgage Investment Company. The plaintiffs are liquidating agencies for the benefit of holders of bonds issued by the Mortgage Company and the benefit of the former National Surety Company, which had guaranteed these bonds.

In their bill of complaint the plaintiffs alleged that the Charleston National Bank as substituted trustee had failed to take steps necessary for the protection of the collateral; that it permitted defaults in payments due on collateral mortgage notes; that it permitted poor collateral notes to be substituted for good ones; that it permitted collateral to be used to pay off one series of bonds to the prejudice of other bondholders; and that it committed other improper acts in administering the trust. After several extensions of time which had been granted the defendant answered on May 17, 1937 denying misconduct in administering the trust and setting up numerous defenses.

From that time until November 16, 1937, orders were obtained by the plaintiffs for an extension of time in which to file a reply and file interrogatories and take depositions; and similar orders were passed extending the time during which the defendants might likewise file interrogatories and take depositions. On November 16, 1937 the plaintiffs filed their reply, obtained a further extension of ninety days for taking depositions, and filed interrogatories directed to several of the defendant's employes. These interrogatories consisted of 159 subdivided questions, 339 in all, asking information in great detail concerning administration of the trust. On December 17, 1937 the defendant made a motion that the interrogatories filed by the plaintiff on November 16, 1937 be struck out, assigning various grounds therefor, among others that the plaintiffs had had at all times free access to the defendant's books and records and could discover for themselves the facts sought by interrogatories, and that therefore answering the interrogatories would serve no useful purpose. The matter was set for hearing at a later date. On February 7, 1938 the plaintiffs were given a further six months' extension of time for taking depositions, with the understanding that the question of inter-

rogatories would be decided in the meantime. The defendant also obtained further extensions of time for taking depositions and filing interrogatories. In June 1938 the plaintiffs served notice that the deposition of one Milford would be taken in Baltimore on June 30, 1938. On June 28, 1938 the court granted defendant's motion to set for hearing on July 19th the question of the propriety of the plaintiff's interrogatories and also granted the defendant's motion to delay·the taking of all depositions until that should be decided.

On August 1, 1938 the court granted defendant's motion of December 17, 1937 to strike out plaintiffs' interrogatories and passed an order to that effect. On the same day the court also ordered that the case be referred to a special master for hearing and report; and further ordered that the plaintiffs should not have any extension of time beyond August 12, 1938 for taking depositions in advance of proceedings before the special master. It was agreed that hearings before the special master should begin in the fall, and the date of October 31, 1938, was subsequently set by the master.

On September 22, 1938, six days after the new rules of civil procedure had become effective, the plaintiffs served notice on the defendant that the depositions of certain witnesses would be taken under the new rule 26. The defendant immediately objected and moved that the testimony of the witnesses be not taken by deposition but should be given before the· special master. The motion was argued by counsel for the respective parties, the plaintiffs contending that discovery by way of depositions before beginning proceedings before the master was important for their case; that rule 26 gave them the right to take depositions for discovery and that their prior efforts to take depositions had been defeated. On the other hand the defendant contended that the new rules did not apply to a pending case when to apply them would work an injustice; that the new rule 30(b), 28 U.S.C.A. following section 723c, vests the court with discretion in preventing the taking of depositions for good cause shown; that to permit them to be taken would require weeks of labor and unnecessarily harass the defendant because the matter could all be presented before the special master, and that the court had on

August 1, 1938, refused plaintiffs' further request for extension of time for taking depositions. As a result of this hearing, Judge McClintic passed the order of October 11, 1938, staying the taking of depositions; and it is to vacate this order that the present petition for the writ of mandamus is prayed.

It will be noted from the above history that the order now sought to be vacated was passed in a case which had been pending for nearly two years before the new rules took effect; and that by virtue of the numerous interlocutory orders which had been passed the District Judge must have been thoroughly familiar with the issues and the proceedings in the case occurring before the particular order was passed. And it will be further noted that the order itself was of an interlocutory nature and not final; and also was passed only after hearing and consideration.

In our opinion the application for the writ of mandamus in this case must be denied. Mandamus is an appropriate writ to require that judicial action shall be taken where the district judge unwarrantably refuses to act, and it, or a writ of prohibition, is appropriate where jurisdiction has been exceeded; but it is not appropriate, where judicial action has been taken, to control or reverse that action, especially where the matter is interlocutory only and can be subsequently reviewed on appeal. It is not doubted that in a proper case this court has the power to issue a writ of mandamus in aid of its appellate jurisdiction. Delaware, L. & W. R. Co. v. Rellstab, District Judge, 3 Cir., 15 F.2d 137, reversed 276 U.S. 1, 48 S. Ct. 203, 72 L.Ed. 439; Ex parte United States, 287 U.S. 241, 248, 53 S.Ct. 129, 77 L.Ed. 283. And we do not doubt that we could properly issue the writ if a district judge arbitrarily refused to take action as required by the new rules of civil procedure. Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 706, 47 S.Ct. 286, 71 L.Ed. 481. But in the instant case the writ is asked for in effect to *reverse* an interlocutory order of the district judge. In Maryland v. Soper, 270 U.S. 9, 29, 46 S.Ct. 185, 189, 70 LEd. 449, the Supreme Court said:

"Mandamus is an extraordinary remedy which is issued by this court under Rev.Stats. § 688 [28 U.S.C.A. § 342] to courts of the United States in the exercise of its appellate jurisdiction, and in

civil cases does not lie to compel a reversal of a decision, either interlocutory or final, made in the exercise of a lawful jurisdiction, especially where in regular course the decision may be reviewed upon a writ of error or appeal. Ex parte Roe, 234 U.S. 70, 73, 34 S.Ct. 722, 58 L.Ed. 1217; Ex parte Tiffany, 252 U.S. 32, 37, 40 S.Ct. 239, 64 L.Ed. 443; Ex parte Park Square Automobile Station, 244 U.S. 412, 37 S.Ct. 732, 61 L.Ed. 1231; Ex parte Slater, 246 U.S. 128, 134, 38 S.Ct. 265, 62 L.Ed. 621; Ex parte Oklahoma, 220 U.S. 191, 209, 31 S.Ct. 426, 55 L.Ed. 431; Ex parte Harding, 219 U.S. 363, 31 S.Ct. 324, 55 L.Ed. 252, 37 L.R.A.,N.S., 392; Ex parte Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876; Ex parte Hoard, 105 U.S. 578, 26 L.Ed. 1176."

And in Interstate Commerce Comm. v. United States, 289 U.S. 385, 394, 53 S.Ct. 607, 611, 77 L.Ed. 1273, it was said:

"Mandamus is an appropriate remedy to compel a judicial officer to act. It may not be used as a substitute for an appeal or writ of error to dictate the manner of his action. Interstate Commerce Comm. v. United States ex rel. Members of Waste Merchants' Ass'n, 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809; Interstate Commerce Comm. v. New York, N. H. & H. R. Co., 287 U.S. 178, 204, 53 S.Ct. 106, 77 L.Ed. 248."

Notice for the taking of the depositions had been given by the plaintiffs under rule 26 of the new federal rules of civil procedure which became effective September 16, 1938, but under rule 30(b) the district judge had discretion to order that they should not be taken. This rule 30(b) provides as follows:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and *for good cause shown*, the court in which the action is pending may make an order that the deposition shall not be taken," et seq. (Italics supplied)

It is also to be noted that rule 86, 28 U.S.C.A. following section 723c, provides that the new rules shall "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies."

It is clear that the district judge was vested with a judicial discretion in passing the interlocutory order now complained of. For this reason mandamus does not properly lie to reverse the action taken. Ex parte United States, 287 U.S. 241, 249, 53 S.Ct. 129, 77 L.Ed. 283; United States ex rel. Alaska Smokeless Coal Co. v. Lane, 250 U.S. 549, 555, 40 S.Ct. 33, 64 L.Ed. 1135; Ex parte Wagner, 249 U.S. 465, 39 S.Ct. 317, 63 L.Ed. 709; American Const. Co. v. Jacksonville, T. & K. W. Ry. Co., 148 U.S. 372, 13 S.Ct. 758, 37 L.Ed. 486; 38 C.J. 624.

We do not doubt that depositions of witnesses before trial may ordinarily be taken by a party to the cause for the purpose of discovery. Indeed rule 26 expressly so provides; and in our opinion the procedure under the rule is entitled to be liberally construed in accordance with the final sentence of rule 1, 28 U.S.C.A. following section 723c, which provides with respect to the rules that "they shall be construed to secure the just, speedy, and inexpensive determination of every action". See, also, Nichols v. Sanborn Co., D.C.Mass., 24 F.Supp. 908, September 30, 1938. But in this case we do not find that there was a clear abuse of discretion by the district judge. The new rules wisely provide for flexibility of administration, and with regard to the taking of depositions for discovery or otherwise a discretion is vested in the district judge to measurably control the otherwise freedom of the taking of depositions where "for good cause shown" it will not, in the opinion of the district judge, promote the administration of justice in the particular case that they be taken. The determination of the existence of the sufficiency of the cause against taking the depositions in this case was for the district judge in his judicial discretion. On this application for mandamus to reverse his ruling on an interlocutory matter, we cannot properly substitute our judgment for his as to the determination of what constituted good cause for the order even though if and when the case should ultimately be here on appeal, the court may be of a different opinion.

As bearing on the discretion of the district judge in making the order, it is to be noted that the case had been pending before him for nearly two years during which time there had been active interlocutory proceedings at various stages of the case, with numerous applications on behalf of the parties respectively for extensions of time for pleadings and taking of depositions, finally resulting on August 1, 1938, in an order under the old Equity Rules 59–68, 28 U.S.C.A. following section 723, referring the case to a master "to sit and hear evidence or preside at the taking of depositions and report his findings and recommendations", with a further order that the plaintiffs should not have any further extension of time beyond August 12, 1938 for taking depositions before an Examiner, under old Equity Rule 47, 28 U.S.C.A. following section 723; and there was an agreement that hearings before the special master should begin in the. fall of 1938., It further appears that the district judge was of the opinion that the interests of justice would be amply served in this case if the depositions which the plaintiffs are now asking to take should be offered before the master without that further delay in the proceedings which would probably result from the taking of depositions for purposes of discovery as desired by the petitioners. The notice for the taking of depositions was not given until September 22, 1938, six days after the effective date of the new rules; and after the court had passed an order, as it was authorized to do under the old Equity Rules, limiting the time for taking depositions to August .12, 1938. Under these circumstances the district judge may have felt that the provisions of the new rule. 26, respecting discovery by deposition should not justly be applied to the old case which had been long pending and which had already been referred to a master for further proceedings.

Nor do we think that prejudice is likely to result to the petitioners as a result of the order complained of. They will have full opportunity to take the testimony of the witnesses before the master, it not being shown that the witnesses will be unavailable therefor. Rule 43(b), 28 U.S.C.A. following section 723c, provides that they "may interrogate any unwilling or hostile witness by leading questions"; and they may also "call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party". Furthermore proceedings before a master are more flexible with respect to time of taking testimony than in the case of a final hearing in open court. Nor is the report of the master necessarily conclusive but is subject to the approval of the court. See rule 53(e) (2), 28 U.S.C.A. following section 723c.

In support of their application for the writ of mandamus the petitioners have contended that the district judge acted arbitrarily in the order complained of, and they attribute his ruling to an alleged lack of sympathy with the new rules, particularly in their provision for discovery by depositions. But we see no necessity to take this view of the matter as the judge was clearly vested with judicial discretion in passing the order complained ed of, whether he was acting under the old or new rules of procedure.

There is no doubt that the new rules are binding on the district courts and should be properly applied and construed in accordance with rule 1 to secure "just, speedy, and inexpensive determination of every action". It is highly important for the successful administration of the new rules that there should be a sympathetic approach thereto by district judges; but it is equally necessary that their application in various situations should be subject to sound judicial discretion, as indeed the rules themselves in many instances so provide.

The application for the writ of mandamus is denied.