In re INSURERS SYNDICATE FOR the JOINT UNDERWRITING OF MEDICO–HOSPITAL PROFESSIONAL LIABILITY INSURANCE, Petitioner.

CORPORACION INSULAR de SEGUROS, Plaintiff, Appellee,

v.

Hon. Juan Antonio GARCIA, etc., Defendant, Appellee.

Appeal of INSURERS SYNDICATE FOR the JOINT UNDERWRITING OF MEDICO–HOSPITAL PROFESSIONAL LIABILITY INSURANCE, Appellant.

Nos. 88–1845, 88–1905.

United States Court of Appeals, First Circuit.

Heard Dec. 9, 1988.

Decided Dec. 28, 1988.

---

Patricio Martinez Lorenzo with whom Hon. Hector Rivera Cruz, Secretary of Justice, Jose Luis Gonzalez Castaner and Ramirez & Ramirez, Hato Rey, P.R., were on brief, for petitioner-appellant.

Sheldon H. Nahmod with whom Jesus R. Rabell Mendez and Cancio, Nadal & Rivera, Hato Rey, P.R., were on brief, for appellee Corporacion Insular de Seguros.

Before BOWNES, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The federal district court commanded the Insurers Syndicate for the Joint Underwriting of Medico–Hospital Professional Liability Insurance (SIMED) to produce for inspection, subject to a protective order, sensitive business information (including rate filings, schedule and experience rating plans, lists of insureds, lists of producers, and data anent premium dollar distribution and reserves). SIMED, nonplussed by the decree and little comforted by the protective order, brought the matter to our attention in two ways: it petitioned for a writ of mandamus (No. 88–1845)[1] and soon thereafter filed a notice of appeal (No. 88–1905). We consolidated the proceedings and granted expedited review. Because we find that petitioner-appellant's twin challenges (1) do not come within the encincture of our appellate jurisdiction under any recognized exception to the finality principle, and (2) are not appropriate fodder for the rarely-used mandamus cannon, we pretermit the proceedings without unnecessary ado.

## I. BACKDROP

SIMED was created by virtue of P.R. Laws Ann. tit. 26, § 4101 *et seq.* (Supp. 1987) as part of the legislative response to a perceived crisis in the availability and affordability of medical malpractice coverage in Puerto Rico. We need not dwell on the mechanics of the law or SIMED's precise structure; it suffices to acknowledge that the legislature, faced with a situation wherein a mere handful of insurers were willing to underwrite malpractice risks, attempted to stimulate the marketplace by establishing a syndicate which would actively compete for such business. The syndicate (SIMED) was created on a "compulsory participation" basis, that is, "[a]ll insurers in Puerto Rico licensed to contract any type of insurance.... shall be members of the Syndicate and their participation in it shall be an indispensable condition for them to continue underwriting insurance in the Commonwealth of Puerto Rico." *Id.* at § 4104.

Whatever the merits of the plan, Corporacion Insular de Seguros (CIS) did not cotton to it. CIS, a licensed insurer which was itself writing medical malpractice insurance, sued in federal district court under 42 U.S.C. § 1983, challenging the constitutionality of the Commonwealth's scheme.[2] In the course of pretrial discovery, CIS sought access to confidential data pertaining to SIMED's operations, including the information described above. After much procedural skirmishing, the district court determined the material relevant and granted the motion subject to an elaborate protective order.[3] *CIS v. Garcia,* Civ. No. 87–0431 (RLA), slip op. (D.P.R. Aug. 15, 1988). That order triggered the present proceedings.

---

1. Technically, SIMED should be in search of a writ of prohibition rather than a writ of mandamus. *See, e.g., In re Recticel Foam Corp.,* 859 F.2d 1000, 1001 n. 1 (1st Cir.1988) (explicating distinction). Although recognizing the misnomer, we shall follow petitioner's lead and use mandamus terminology to avoid confusion.

2. Given the present posture of the proceedings, it would serve no useful purpose to limn the nature of CIS's claims. It is enough to note

that, at this stage, the claims cannot be characterized as frivolous.

3. The order, denominated by the district court as a "confidentiality order," is annexed hereto as an appendix. In general, it had the effect of (1) barring CIS's officers, directors, and employees from access to the confidential materials, *e.g.,* Appendix § 12, and (2) restricting dissemination of the materials to counsel and independent experts. *E.g., id.* §§ 4–5.

It is against this backdrop that we consider petitioner-appellant's dual offerings. We look first at the appeal, focusing on its lack of a jurisdictional foundation; we then turn to the matter of mandamus, with no more propitious a result.

## II. THE APPEAL

■ Our jurisdiction over appeals derives primarily from 28 U.S.C. § 1291, which provides that the courts of appeals may review "final decisions of the district courts of the United States." An order is usually considered "final" only when it "resolv[es] the contested matter, leaving nothing to be done except execution of the judgment." *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir.1988) (quoting *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir.1988)). It is apodictic that "discovery orders, in general, are not final." *Recticel*, 859 F.2d at 1002. *See also Appeal of Licht & Semonoff*, 796 F.2d 564, 568 (1st Cir.1986); *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 21 (1st Cir.1985); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir.1984); *Grinnell Corp. v. Hackett*, 519 F.2d 595, 596 (1st Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975); *Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed. 2d 106 (1975); *cf. Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 943 (2d Cir.1983) (discovery orders usually not appealable under 28 U.S.C. § 1292(a)(1)). SIMED attempts to skirt this formidable barrier by bringing its plea within the collateral-order exception to the finality principle.[4] *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). It might as well seek to have the cow jump over the moon.

Collaterality, in the *Cohen* sense, requires conformity to certain hard-and-fast essentials:

The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion. *United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir.1979); *accord Licht v. Semonoff*, 796 F.2d at 570–71; *Boreri*, 763 F.2d at 21. As we have recently observed, "discovery orders rarely satisfy all four of these criteria." *Recticel*, 859 F.2d at 1004.

This case is not beyond the mainstream. It involves a fairly typical discovery decision, committed principally to the trial court's sound and informed discretion. We do not balk, therefore, at barring the *Cohen* door by reliance upon the copious authority which has rather consistently held discovery orders compelling production of documents not appealable within the *Cohen* formulation. *See, e.g., Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 953 (8th Cir.), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *Miller v. Reighter*, 581 F.2d 1181, 1181–82 (8th Cir. 1978) (per curiam); *Pauls v. Secretary of the Air Force*, 457 F.2d 294, 298 (1st Cir. 1972); *Borden Co. v. Sylk*, 410 F.2d 843, 845–46 (3d Cir.1969); *Paramount Film Distrib. Corp. v. Civic Center Theatre, Inc.*, 333 F.2d 358, 361–62 (10th Cir.1964). Here, as with discovery orders generally, interruption of the district court's ongoing supervision of what promises to be a long, drawn-out discovery process would carry with it much too high a systemic price in terms of disruption, delay, and diminished efficiency. *See Recticel*, 859 F.2d at 1003; *cf. Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 46 (1st Cir.1988) (discussing

---

4. In its brief, petitioner-appellant also asseverates that its quest lies within the further exception to the final judgment rule framed in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204, 12 L.Ed. 404 (1848). But this case involves neither title to property nor its "immediate disposition and delivery," *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 803 (1st Cir.1985), in the requisite proprietary sense. *Forgay* is a steed of a much different hue, and cannot be ridden by SIMED.

dangers attending "too easily available piecemeal appellate review").

## III. THE PETITION

■ We need not loiter long over the claim that our mandamus power should be activated. "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam). As we have recently cautioned:

Mandamus should be dispensed sparingly and only in pursuance of the most carefully written prescription, not made available over the counter, on casual demand. It is not a substitute for interlocutory appeal.

*Recticel*, 859 F.2d at 1005. This case does not warrant a dose of such strong medicine.

Among other things, a mandamus petition must exhibit "clear entitlement to the relief requested," *id.* (footnote omitted), that is, the right to the writ must be "clear and indisputable." *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899)). It is for precisely that reason that mandamus, as a general rule, will not issue to control exercises of judicial discretion. *See Allied Chemical*, 449 U.S. at 36, 101 S.Ct. at 190–91; *Recticel*, 859 F.2d at 1006. Fundamentally, appellate oversight of trial court discretion is what SIMED seeks in this instance. Unhappy with the protective order crafted by the district court, distrustful that plaintiff's counsel will abide by the rigorous terms of the order, concerned that its secrets will unfairly be used against it in vistas beyond the pending litigation, petitioner-appellant asks that we employ one of "the most potent weapons in the judicial arsenal." *Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967). But we should be hesitant to use so formidable a cannon to combat a gnat, howsoever bothersome; finetuning a protective order, though of undoubted consequence to the litigants, lacks the extraordinary characteristics essential for mandamus relief.

What we said in *Recticel*, we think, has plain pertinency here:

Interlocutory procedural orders ... rarely will satisfy th[e] precondition for mandamus relief. Trial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery. Decisions regarding the scope of discovery, ... and the protections to be afforded parties in the discovery process, are ordinarily left to the informed judgment of the district judge, who is in a unique position to gauge and balance the potentially conflicting interests at stake.

*Recticel*, 859 F.2d at 1006. The shaping—and reshaping, if necessary or advisable—of the protective order falls well within the scope of this generalization. Were we to tinker with the order, as petitioner-appellant beseeches us, then the floodgates would be open. It would, as we wrote in *Recticel*,

disserve the proper relationship between trial and appellate courts in the federal system, and wreak havoc with the taxing demands of modern-day case management, were the court of appeals gratuitously to inject itself as a super-navigator of sorts, second-guessing the district court from turn to turn as that tribunal wended its way through the thickets and brambles of complex litigation. To do so, we suggest, would be to concentrate on the trees at the expense of a balanced vision of the forest.

*Id.* at 1007.

■ We need go no further. SIMED—as the party seeking issuance of the writ—had the burden of demonstrating the clarity of its right to relief. It failed in this task; there has been no showing that the district court acted beyond its jurisdiction in ordering the documents produced pursuant to the protective order, or exceeded its discretion "to such a degree that its actions amount[] to a 'usurpation of power.'" *In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 503 (1st Cir.1982) (quoting *DeBeers Consolidated Mines, Ltd. v. United*

*States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945)). Thus, without reaching the merits of petitioner-appellant's grievances, we decline its invitation to review a garden-variety discovery order in the context of an application for mandamus.[5] *See Boreri*, 763 F.2d at 26; *Grinnell*, 519 F.2d at 598–99; *cf. Recticel*, 859 F.2d at 1005–06 (same; involving case management order).

*In No. 88–1845, the petition for writ of mandamus is denied as improvidently brought.*

*In No. 88–1905, the appeal is dismissed for want of appellate jurisdiction.*

Costs in favor of respondent-appellee Corporacion Insular de Seguros.

## APPENDIX

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

Corporacion Insular de Seguros, Plaintiff,

v.

Hon. Juan Antonio Garcia, Defendant.

### CIVIL NO. 87–0431(RLA)

### CONFIDENTIALITY ORDER

Pursuant to Fed.R.Civ.P. 26(c)(7) it is now ORDERED that:

1. The minutes of the Syndicate together with the materials requested from Mr. Oscar Sánchez, CPA, in his Deposition Subpoena be produced forthwith without deletions and subject to the terms and conditions of this Protective Order;

2. When used in this Order, the word "confidential material" will be construed to mean any financial data regarding the Syndicate, whether the same is revealed in a document, deposition, an answer to a request for discovery, or otherwise;

3. The confidential material produced by the Syndicate shall be used exclusively for the prosecution of this action or the defenses thereto;

4. Confidential material shall not be disclosed to any person other than:

a. counsel for the plaintiff, provided, however, that said counsel (1) has previously entered his appearance and (2) is actively engaged in the preparation of the case against the defendant in question;

b. secretaries and other employees of counsel involved solely in one or more aspects of organizing, filing, coding, converting, storing or retrieving data;

5. Insofar as plaintiff's trial counsel who obtain confidential information may deem it necessary for the preparation or trial of this case to consult with independent experts, they may disclose such confidential information to independent consultants not regularly employed or associated with either party; provided, however, that:

a. no such expert shall be consulted until the party disclosing the confidential information approves of the consultant and of the confidential information which is to be disclosed;[1] and

b. such independent consultant or consultants in writing agree not to discuss or permit to be disclosed such confidential information to any other person than such trial counsel, and has signed the agreement attached to this order;

6. Confidential information so designated shall not be filed with the Clerk of the Court or included in whole or in part in pleadings, motions, or briefs, except under seal, and when so filed, shall be opened only by personnel authorized by this Court;

7. Except for plaintiff's counsel, no other person authorized under the terms of

---

**5.** The points raised in the petition cannot easily be separated from the context of the particular litigation. None of them can be characterized as possessing the broad applicability or great public importance requisite to bring what we have termed "advisory mandamus" into consideration. *See Sorren*, 605 F.2d at 1215–16; *In re Ellsberg*, 446 F.2d 954, 956–57 (1st Cir.1971).

Rather, this petition raises "interstitial matters of case administration" of the sort thought unsuited to advisory mandamus. *Recticel*, 859 F.2d at 1005 n. 4.

**1.** Which approval shall not be unreasonably denied.

this order to receive access to the confidential material shall be granted access to the latter until such person has read this order and agrees in writing, in the form annexed to and made part of this order, to be bound by the terms hereof;

8. Counsel for the plaintiff shall maintain a list of all persons to whom any confidential material is disclosed and the agreements signed by said persons, and shall provide counsel for the Syndicate upon request with copy of the list and of the signed agreements;

9. All confidential material must be held in a secure place by the person receiving said material;

10. During a deposition, confidential information shall be used and/or produced in the following way:

a. A copy of this confidentiality order shall be furnished to a deponent who is not a party or a representative of a party before being examined about, or asked to produce, potentially confidential materials, by attaching a copy of this Order to the subpoena to attend and/or subpoena duces tecum accompanying the notice of the taking of that non-party's deposition and having a copy of it available for reference during the taking of the deposition.

b. Confidential materials produced during the taking of a deposition, either voluntarily or in compliance with a subpoena duces tecum, including those marked as deposition exhibits, shall be designated by the deponent or his representative as confidential during or before the taking of the deposition and treated accordingly. Failure to designate such materials as confidential materials during or before the taking of the deposition shall result in waiver of the privilege to designate such materials as confidential materials.

c. During the taking of a deposition in which confidential information is *used* by an examining party the examining party using confidential information shall orally inform the court reporter contemporaneously with its use that the transcript of said deposition contains confidential information and the name, mailing address, and telephone number of the designating party (parties).

d. Failure by an examining attorney to inform the court reporter of their use of confidential information during the taking of a deposition shall result in contempt proceedings against the examining attorney and the imposition of appropriate sanctions upon counsel or the party, unless the designating party, i.e., the entity asserting the confidentiality of the same,[2] or its counsel, if present, fails to object to such failure to inform, in which case said designating party shall be deemed to have waived the privilege to designate portions of the transcript as confidential material.

e. If the designating party is also the examining party, said party's failure to inform the reporter of the disclosure of their confidential material or the information contained therein shall result in waiver of the privilege to designate portions of the transcript as confidential material.

f. During the taking of a deposition in which the deponent discloses confidential information, the deponent disclosing confidential information shall orally inform the court reporter contemporaneously with the disclosure that the transcript of said deposition contains confidential information and the name, mailing address, and telephone number of the designating party (parties).

g. Failure by the deponent or his or her counsel to inform the reporter of their disclosure of confidential information shall result in waiver of the privilege to designate portions of the transcript as confidential.

h. The court reporter recording the deposition shall be instructed by the person using or disclosing confidential information, as the case may be, (or, if present, by the designating party, upon failure to instruct by the person using or disclosing confidential information) to forward only one copy of the transcript and all exhibits to the designating party.[3]

---

2. Designating party includes non-party entities.

3. The party calling the deposition must pay the costs of the transcript as customary.

i. Designating parties shall identify portions of the transcript that are entitled to such treatment as confidential material as follows:

(1) Confidential information within a deposition transcript shall be designated by underlining the portions of the pages that are confidential and marking such pages with the following legend: "CONFIDENTIAL—SUBJECT TO PROTECTION PURSUANT TO THE CONFIDENTIALITY ORDER."

(2) The designating party shall then produce "expurgated" copy of the transcript, i.e., one that does not include the confidential portions and forward both the complete marked transcript and the expurgated copy to opposing counsel.

(3) Subject to all other applicable rules, parties who are not entitled to receive the designating party's confidential material shall be given copies of the expurgated transcript, all other parties shall receive copies of the full transcript.

### I. *Designation Deadline*

Failure by parties and non-party deponents to return the designated transcript and the expurgated copy to the opposing counsel on or before fifteen (15) calendar days from receipt of the transcript shall result in waiver of the right to designate any part thereof as confidential.

### II. *Confidential information at trial.*

Subject to the Federal Rules of Evidence, stamped confidential materials and other confidential information may be offered in evidence at trial or any court hearing, even as rebuttal evidence, provided that the proponent of the evidence gives advance written notice of intent to use such evidence to counsel for the designating party at least sixty (60) calendar days prior to the beginning of the trial or hearing during which such evidence is to be offered. Any party may move the Court for an order that such evidence be received in camera or under other conditions that will prevent unnecessary disclosure. The Court will then determine whether the proffered evidence should continue to be treated as confidential information and, if so, what protection, if any, may be afforded to such information at trial;

12. Depositions, answers to interrogatories and discovery material remain sealed and opened only by leave of Court;

13. The Corporación Insular de Seguros, its directors, officers, employees or any other person in any way related to plaintiff shall not have any access to the confidential information;

14. The provisions of this order shall be continuous and shall not terminate at the conclusion of this action, and that all confidential material provided to the plaintiff, and all copies of the same, shall be returned to the party producing said confidential information upon the entry of a final unappealable judgment in this action.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 15th day of August, 1988.

(s) Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge