October 19, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1914

IN RE:

PETER FISHER & BALFOUR HOLDINGS, INC.,
Petitioner.

ERRATA SHEET

This opinion of this court issued on October 12, 1993 is
amended as follows:

On page 4, not 2, fifteenth line, replace "Trainor" with
Fisher".

On page 6, eighth line of the first full paragraph, replace
"circumstances which" with "circumstances,".

October 12, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1914

IN RE:

PETER FISHER & BALFOUR HOLDING, INC.,
Petitioner.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Selya, Circuit Judges.

Evan Slavitt, Hinckley, Allen & Snyder, James B. Hicks, Kathy A.

Jorrie and Andrews & Kurth L.L.P., on Petitions for Writ of Mandamus,

for petitioners.

Per Curiam. Petitioners Peter Fisher and Balfour

Holding, Inc. [hereinafter collectively "Fisher"] seek a writ

of mandamus directed to the United States District Court for

the District of Massachusetts. This petition arises out of

the district court's order declaring a mistrial after the

parties to the action could not agree on the implications of

the jury's answer to questions submitted to them pursuant to

Fed.R.Civ.P. 49(a). The court found that in the

circumstances of the case, "justice w[ould] best be served by

retracing what, in the context of this litigation, ha[d] been

a relatively small step."

Background

The matter below has its source in two actions, both of

which relate to a multi-party venture aimed at developing a

human blood substitute. We summarize the facts briefly.

Biopure Corporation manufactures Hemopure, a potential human

blood substitute. In the late 1980s, William Trainor and

Peter Fisher discussed entering into a joint venture

agreement to provide financial assistance to Biopure in

exchange for certain rights in Hemopure and other Biopure

products. Fisher believed that an agreement had been entered

into. However, in 1990, Biopure and a corporation controlled

by Trainor, Bio-Vita, Ltd., entered into an agreement which

did not include Fisher. Believing himself wrongfully

excluded from the deal, Fisher brought an action against

Biopure and Trainor [the "Fisher Action"]. After Trainor had

invested over one million dollars in the Biopure project,

Biopure rescinded the 1990 agreements on the grounds that

Trainor had made misrepresentations and failed to meet

certain obligations. Trainor then commenced his own action

against Biopure [the "Bio-Vita Action"].

After more than two years of pretrial discovery and

litigation, the Fisher Action was called to trial in November

1992. The court severed the first count of Fisher's amended

complaint for immediate trial. This count alleged the

existence, and Trainor's breach, of a binding joint venture

agreement. The amended complaint also included counts of

misrepresentation, interference with contract or advantageous

relationship, and breach of fiduciary duty against Trainor,

and several counts against Biopure.

At the conclusion of the trial, and upon stipulation by

the parties, the following questions were submitted to the

jury pursuant to Fed.R.Civ.P. 49(a):

1. Did [Fisher] and [Trainor] enter into
a binding oral contract providing that they
would share 50/50 in the expense and gains
involved in the Biopure project?

If your answer to question one is "No" you
need go no further. If your answer to
question one is "Yes" go on to question[s]
two and three.

2. Did [Fisher] breach the terms of [the]
oral contract with [Trainor] by unjustifiably

-4-

failing to contribute [his] agreed upon share
of the purchase price and other expenses
incurred with respect to the Biopure project?

3. Did [Trainor] breach the terms of his
oral contract with [Fisher] by unjustifiably
denying [Fisher] an opportunity to
participate on a 50/50 basis in the Biopure
project?

The jury answered "yes" to questions one and three, and "no" to

question two.1 The court then recessed the jury with the

intention of bringing them back later to resolve the issue of

damages.

The jury was never called back. Instead on July 12, 1993,

the court declared a mistrial sua sponte. It based its decision

on the fact that the parties "could not . . . agree to the

implications of the jury's special verdict"2 and how to proceed

1. Given these responses the jury was not required to
address a fourth question which asked, if both Fisher and
Trainor had breached the contract, who breached it first.

2. According to the court's memorandum:

Trainor believes that Fisher's right to any relief-
-i.e., a share in the judgment, if any, against
Biopure--should be conditioned upon his payment of
those expenses he would have been obligated to
cover had he not been excluded as a joint venturer
from the Biopure project. Fisher argues that he
is excused from not putting up his share of the
expenses, in light of Trainor's breach of the joint
venture agreement. Fisher contends that the trial
of the remaining counts in the Fisher Action,
including the damages phase of the first count,
should await the conclusion of the trial in the
Bio-Vita Action. Trainor has expressed a
willingness to proceed with the Bio-Vita Action,
but not without the financial support of Fisher.
Moreover, the parties disagree as to who should be
controlling counsel with respect to the remaining

-5-

against Biopure in the Bio-Vita Action. "Given these

extraordinary circumstances, [the court] decided not to hold

either party to the other's interpretation of the verdict, or to

[its] own."

Petitioners contend that in failing to enter a verdict,

pursuant to Fed.R.Civ.P. 58(2), in accord with the jury's special

verdict, the court deprived them of their Seventh Amendment right

to have judgment entered on the findings of the jury. They

petition this court to issue a writ to the district court to

enter judgment on the special verdict.

Uses of Mandamus

The All Writs Act, 28 U.S.C. 1651(a), empowers federal

courts to issue writs of mandamus where "necessary or appropriate

in aid of their respective jurisdictions." See In Re Pearson,

990 F.2d 653, 656 (1st Cir. 1993). Traditionally such writs have

been used "to confine inferior courts to the lawful exercise of

their prescribed jurisdiction or compel them to exercise their

authority when duty demands." Id.; see also Mallard v. United

States Dist. Court for Southern Dist., 490 U.S. 296, 308 (1989)

(quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943)).

Being drastic measures, such writs "must be used sparing and only

in extraordinary situations." Pearson, 990 F.2d at 653 (citing

cases). Otherwise they may undermine the policies surrounding

counts.

-6-

the congressional judgment that in general appellate review

should be postponed until after final judgment. Allied Chemical

Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). The decision on

whether to issue the writ is within the sound discretion of this

court. Kerr v. United States District Court for Northern Dist.,

426 U.S. 394, 403 (1976).

To ensure that the writ issue only in extraordinary

circumstances, a petitioner is required to show "some special

risk of irreparable harm" and a "clear entitlement to the relief

requested" before a writ will be issued.3 In Re Recticel Foam

Corp., 859 F.2d 1000, 1005 (1st Cir. 1988); Pearson, 990 F.2d at

656. To satisfy the first requirement, a petitioner "must

ordinarily demonstrate that something about the order, or its

circumstances would make an end-of-case appeal ineffectual or

leave legitimate interests unduly at risk." Id. (quoting

Recticel, 859 F.2d at 1005-06). To satisfy the second,

petitioner must "establish a 'clear and indisputable' right to

the requested relief or, in other words, that the challenged

order is palpably erroneous." Id. (quoting Banker Life & Cas.

Co. v. Holland, 346 U.S. 379, 384 (1953) (quoting United States

v. Duell, 172 U.S. 576, 582 (1899))).

3. Cases of great public import where advisory mandamus is
appropriate are excepted from these requirements. See In Re

Recticel Foam Corp., 859 F.2d 1000, 1005 n.4 (1st Cir. 1988).

This is not such a case.

-7-

Discussion

Petitioners assert that the court's failure to enter

judgment in accord with the verdict in their favor deprived them

of their rights under the Seventh Amendment. See Robles v. Exxon

Corp., 862 F.2d 1201, 1204 (5th Cir.), cert. denied, 490 U.S.

(1989) ("rule 58(2) and the seventh amendment command that

judgment be entered on the verdict if the jury's answers are

clear and consistent, subject, of course, to the usual motions

under rules 50 and 59 for judgment notwithstanding the verdict or

a new trial"); Toucet v. Maritime Overseas Corp., 991 F.2d 5, 8

(1st Cir. 1993) ("[w]hen a special verdict form results in

apparently conflicting findings, a court has a duty under the

Seventh Amendment to harmonize the answers if at all possible

under a fair reading"). Furthermore, they assert that the

court's declaration of a mistrial because the parties could not

agree on the meaning of the verdict was a clear abuse of

discretion. See Freeman v. Package Machinery, Co., 865 F.2d

1331, 1333 (1st Cir. 1988) (judge may set aside jury verdict in

civil case "only if, 'it is quite clear that the jury has reached

a seriously erroneous result.'") (quoting Borras v. Sea-Land

Services, Inc., 586 F.2d 881, 887 (1st Cir. 1978)). We do not

address the merits of these contentions.

As we have said above, to obtain mandamus relief a

petitioner must show both a special risk of irreparable harm and

a clear entitlement to the relief he seeks. The Supreme Court has

-8-

indicated that "[a] trial court's ordering of a new trial rarely,

if ever, will justify the issuance of a writ of mandamus" because

it is likely to meet neither of these standards. Daiflon, 449

U.S. at 36 First, since a litigant may seek review on direct

appeal after final judgment, it cannot be said that the litigant

is without other adequate means of relief. Id. Second, in a

matter committed to the discretion of the trial court, it is

unlikely that a litigant can demonstrate that his right to a

particular result is clear and indisputable. Id.

Even if this were a rare instance where a discretionary

order by a trial court was a palpable abuse of discretion,

petitioners still have an adequate remedy through a direct appeal

after final judgment. See Navarro de Cosme v. Hospital Pavia,

922 F.2d 926, 929 (1st Cir. 1991) ("[i]n a civil case, the remedy

for a wrongfully declared mistrial is a second trial"). An

erroneous declaration of a mistrial--if the declaration were in

fact erroneous--is not an extraordinary circumstance. Hence, it

does not merit the extraordinary remedy of mandamus relief. Nor

does the fact that an appeal after final judgment will require

more burdensome litigation, standing alone, justify our use of

the power of mandamus. In Re Pearson, 990 F.2d at 661.

Petitioners' request for a writ of mandamus is denied.

-9-