USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1174 KAY DOUGHTY, MASSACHUSETTS COMMISSIONER OF INSURANCE, ETC., Plaintiff, Appellee, v. UNDERWRITERS AT LLOYD'S, LONDON, ET AL., Defendants, Appellants. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS _________________________ No. 93-1214 IN RE: DEREK RICHARD WALLIS, ETC., ET AL., Petitioners. _________________________ ON PETITION FOR WRIT OF MANDAMUS _________________________ [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ___________________________ Mark A. Kreger, with whom Andrew Kochanowski, Robert A. _______________ ___________________ __________ Badgley, Lord, Bissell & Brook, Kenneth W. Erickson, Matthew M. _______ _____________________ ___________________ __________ Burke, and Ropes & Gray were on brief, for appellants- _____ _______________ petitioners. Raymond J. Brassard, with whom Scott Harshbarger, Attorney ___________________ __________________ General, Thomas A. Barnico, Assistant Attorney General, J. David _________________ ________ Leslie, Stephen M. Voltz, and Rackemann, Sawyer & Brewster, P.C. ______ ________________ __________________________________ were on brief, for respondent-appellee. _________________________ October 18, 1993 _________________________ SELYA, Circuit Judge. In this proceeding, we conclude SELYA, Circuit Judge. _____________ that the district court's abstention-based remand order is not immediately appealable and that mandamus is not an appropriate alternative. Because this jurisdictional determination involves an issue on which the circuits are somewhat less than uniform, we take some pains to elucidate our rationale. We do not, however, reach the merits and, accordingly, leave a veritable hothouse of efflorescent questions to be plucked at another time and in another forum. I. BACKGROUND I. BACKGROUND The controversy that is before us finds its genesis in a beguilingly simple question: "Who insures the insurers?" The question arises in connection with American Mutual Liability Insurance Company (AMLICO), a Massachusetts-based firm, which entered into a series of reinsurance contracts over a period of more than three decades. When AMLICO began paying out huge sums to satisfy asbestos-related claims at the tail end of this period, its efforts to secure reimbursement from reinsurers bore no fruit. Unassisted, AMLICO could not stanch the financial hemorrhaging and sought protection under state insolvency laws. The Massachusetts Supreme Judicial Court ordered the firm liquidated, and, in due course, appointed respondent-appellee Kay Doughty, the Commonwealth's Commissioner of Insurance, as permanent receiver. Doughty filed suit in state court to recover an estimated $15,000,000 in overdue reinsurance indemnities, as well 2 as treble damages under the Massachusetts trade practices statute. See Mass. Gen. Laws ch. 93A, 10, 11 (1984). She ___ named as defendants a melange of entities alleged to have entered into reinsurance pacts, including the so-called London Market Companies and several underwriting syndicates at Lloyd's, London (collectively, "the Reinsurers").1 The Reinsurers did not relish the chance to settle accounts in a court of law. Citing agreements contained in some (but far from all) of the reinsurance contracts, they formally requested that AMLICO submit its claims to arbitration. Doughty declined the invitation. She asserted, among other things, that the call for arbitration came too late; that the Reinsurers had waived the benefit of any agreements to arbitrate; and that, in any event, the dispute as a whole did not qualify as arbitrable. ____________________ 1In labelling the London Market Companies and the Underwriters at Lloyd's, collectively, as "the Reinsurers," we exclude for present purposes a number of domestic firms and certain other foreign-based insurance providers (e.g., English & ____ American Insurance Co. and St. Helens' Insurance Co.) named as defendants in Doughty's action. The appellation "London Market Companies" is itself a collective term describing a consortium of foreign-based insurance providers, including Excess Insurance Co.; General Reinsurance Co. (Amsterdam); General Reinsurance Syndicate; Anglo French Insurance Co. (as successor to Federation General Insurance Co.); British National Insurance Co.; Sovereign Marine & General Insurance Co.; Royal Scottish Insurance Co.; Swiss National Insurance Co.; Zurich Reinsurance (U.K.) (as successor to Turegum Insurance Co.); and Gan Minster Insurance Co. (as successor to Minster Insurance Co.). Finally, we note that the Lloyd's underwriting syndicates are identified in the notice of appeal and petition for mandamus only as "Derek Richard Wallis, for himself and those other Underwriters at Lloyd's, London." 3 At that point, the Reinsurers invoked 9 U.S.C. 205 (1988)2 and removed Doughty's suit to the United States District Court for the District of Massachusetts. Next, they filed motions to compel arbitration and, as an interim prophylactic, to stay proceedings pending the outcome of the arbitral process. Doughty objected to these motions and moved on sundry grounds for an order remanding the case to state court. The Reinsurers opposed this motion. Concluding that principles of Burford abstention _______ controlled, see Burford v. Sun Oil Co., 319 U.S. 315 (1943); see ___ _______ ___________ ___ also Fragoso v. Lopez, 991 F.2d 878, 882-83 (1st Cir. 1993) ____ _______ _____ (explicating scope, reach, and current status of Burford _______ abstention), the district court overruled appellants' objection and granted the motion to remand. The court did not speak to the other reasons advanced in support of the motion. Moreover, consistent with its relinquishment of jurisdiction, the court left both the question of arbitrability and the related matter of a stay to the state tribunal. This proceeding ensued. In it, the Reinsurers wear two hats, appearing as both appellants and petitioners; they appeal ____________________ 2This statute implements the Convention on the Recognition of Foreign Arbitral Awards (the "Convention"). It provides that, if "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding." Under 9 U.S.C. 202, the arbitration agreements here at issue arguably come within the Convention's grasp because, if the agreements exist and remain in effect, at least one party to each such agreement is a foreign entity. 4 from the remand order while simultaneously seeking a writ of mandamus aimed at recalling it. We consolidated these two initiatives for briefing, oral argument, and decision. II. THE APPEAL II. THE APPEAL We begin our inquiry into the appeal by addressing the question of appellate jurisdiction for, if no jurisdiction attaches, the appeal founders. See In re Recticel Foam Corp., ___ __________________________ 859 F.2d 1000, 1002 (1st Cir. 1988). Here, two hurdles block the jurisdictional path: the statutory bar to appellate review of remand orders, see 28 U.S.C. 1447(d) (1988), and the bedrock ___ requirement that jurisdiction can never be assumed but must be premised on some affirmative source. See, e.g., Massachusetts v. ___ ____ _____________ V & M Management, Inc., 929 F.2d 830, 833 (1st Cir. 1991) (per _______________________ curiam). We trace the dimensions of each hurdle and, in the process, consider appellants' hurdle-clearing capability. A. The Statutory Bar. A. The Statutory Bar. _________________ 28 U.S.C. 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Although this statute prohibits appellate review of remand orders "whether erroneous or not and whether review is sought by appeal or by extraordinary writ," Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 343 ______________________ _____________ (1976), the proscription is deeper than it is wide. Because courts must read section 1447(d) in pari materia with its ____ _______ statutory neighbor, 28 U.S.C. 1447(c), see Thermtron, 423 U.S. ___ _________ 5 at 353, only remand orders issued under the authority of section 1447(c) are rendered unreviewable by the operation of section 1447(d), see Garcia v. Island Program Designer, Inc., ___ F.2d ___ ______ ______________________________ ___, ___ (1st Cir. 1993) [No. 92-1853, slip op. at 5]; V & M ______ Management, 929 F.2d at 832-33. And, since section 1447(c), by __________ its terms, is concerned exclusively with remands stemming from "defect[s] in removal procedure" such that "the district court lacks subject matter jurisdiction," it follows that section 1447(d) leaves open the possibility of appellate review in all cases that are remanded for reasons not covered by section 1447(c). This is such an instance. Despite the fact that Doughty articulated several reasons for remanding the case, many of which implicated section 1447(c), the district court shunted these asseverations to one side and instead remanded exclusively on the basis of Burford abstention. Because abstention, by _______ definition, assumes the existence of subject matter jurisdiction in the abstaining court after all, one must have (or, at least, presume the presence of) subject matter jurisdiction in order to decline the exercise of it section 1447(c) does not apply to an abstention driven remand. See Corcoran v. Ardra Ins. Co., 842 ___ ________ _______________ F.2d 31, 34 (2d Cir. 1988). Hence, the statutory bar does not preclude us from reviewing the lower court's remand order. B. Possible Sources of Appellate Jurisdiction. B. Possible Sources of Appellate Jurisdiction. __________________________________________ Our determination that 28 U.S.C. 1447(d) does not operate to bar appellate review merely removes the first hurdle 6 blocking the jurisdictional path. To pass the next hurdle, the Reinsurers must demonstrate the existence and applicability of some affirmative authority conferring jurisdiction on the courts of appeals to review remand orders of the sort at issue here. The Reinsurers try to clear this hurdle from three different angles. They urge that the remand order is appealable under 28 U.S.C. 1291 (1988)(conferring jurisdiction on the courts of appeals to review "final decisions of the district courts"), or, alternatively, as a collateral order, see Cohen v. Beneficial ___ _____ __________ Industrial Loan Corp., 337 U.S. 541, 546 (1949), or, if all else _____________________ fails, on the basis that the district court's rulings, taken in their totality, constitute a set of orders appealable under the Federal Arbitration Act. We find these exhortations unconvincing. 1. The Final Judgment Rule. In respect to the 1. The Final Judgment Rule. _________________________ suggestion that the remand order is appealable as a final judgment, the sockdolager is that the Supreme Court has said exactly the opposite: [B]ecause an order remanding a removed action does not represent a final judgment reviewable by appeal, the remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done. Thermtron, 423 U.S. at 352-53 (citation and internal quotation _________ marks omitted). The Reinsurers attempt to deflect the force of this blunt statement by suggesting that it should be regarded as dictum. They posit that, because the Thermtron Court found the _________ 7 remand order so egregious as to justify mandamus, no need to decide the availability of direct appellate review ever arose. In advancing this suggestion, the Reinsurers are whistling past the graveyard. "Dictum" is a term that judges and lawyers use to describe comments relevant, but not essential, to the disposition of legal questions pending before a court. See Kastigar v. ___ ________ United States, 406 U.S. 441, 454-55 (1972); Dedham Water Co. v. _____________ _________________ Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992); _____________________________ United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988). _____________ _______ Given the familiar principle that "whatever may be done without the employment of [mandamus], may not be done with it," Ex parte _________ Rowland, 104 U.S. 604, 617 (1882)); see also Helstoski v. Meanor, _______ ___ ____ _________ ______ 442 U.S. 500, 505-08 (1979), the Court's statement in Thermtron _________ defies description as mere dictum. To the exact contrary, the mandamus remedy employed in Thermtron necessarily betokened, and, _________ indeed, depended on, the Court's antecedent holding anent the unavailability of direct appellate review. Because deleting the challenged statement would have impaired the analytical foundation of the Court's ultimate decision to issue mandamus, that statement is properly categorized as part of the court's holding, not as dictum.3 ____________________ 3On this issue, all roads lead to Rome. Were we to assume, favorably to appellants, that the challenged statement did not comprise part of the Court's holding, we would nevertheless hew to it. Carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative. See United States v. Santana, ___ F.2d ___, ___ ___ ______________ _______ (1st Cir. 1993) [No. 93-1393, slip op. at 19-20]; McCoy v. _____ 8 Still using the final judgment rule as their stepping stone, the Reinsurers make a second effort to boost themselves over the hurdle an effort hinging on the assumption that Thermtron did not survive the Court's later decision in Moses H. _________ ________ Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). ____________________ _____________________ This argument, too, is easily repelled. The short, dispositive answer to the argument is that this court only recently refused to follow those cases suggesting that Cone undermines Thermtron, ____ _________ and, instead, continued to apply Thermtron's rule that remand _________ orders are not final. See Garcia, ___ F.2d at ___ [slip op. at ___ ______ 6-8]. That ends the matter. It is black-letter law that, in a multi-panel circuit, newly constituted panels are, with few exceptions (none applicable here), bound by prior panel decisions closely in point. See, e.g., United States v. Wogan, 938 F.2d ___ ____ _____________ _____ 1446, 1449 (1st Cir.), cert. denied, 112 S. Ct. 441 (1991); _____ ______ Jusino v. Zayas, 875 F.2d 986, 993 (1st Cir. 1989). Thus, ______ _____ principles of stare decisis require our allegiance to the _____ _______ Thermtron rule in this situation. _________ The slightly longer, but equally forceful, rebuttal is ____________________ Massachusetts Inst. of Technology, 950 F.2d 13, 19 (1st Cir. ___________________________________ 1991), cert. denied, 112 S. Ct. 1939 (1992). This truism is _____ ______ fortified here inasmuch as the rule that the Court's statement enunciates that remand orders are not final judgments has been adopted in a long string of circuit-level opinions. See, ___ e.g., Garcia, ___ F.2d at ___ [slip op. at 7-8]; Melahan v. ____ ______ _______ Pennock Ins., Inc., 965 F.2d 1497, 1500 (8th Cir. 1992); V & M ___________________ _____ Management, 929 F.2d at 833-34; Corcoran, 842 F.2d at 34; Nasuti __________ ________ ______ v. Scannell, 792 F.2d 264, 267 (1st Cir. 1986); see also Milk `N' ________ ___ ____ ________ More, Inc. v. Beavert, 963 F.2d 1342, 1344 (10th Cir. 1992); ___________ _______ McDermott Int'l v. Lloyd's Underwriters, 944 F.2d 1199, 1203 (5th _______________ ____________________ Cir. 1991). 9 that there seem to be other good reasons counselling in favor of Thermtron's continued vitality. In Cone, the Court held that a _________ ____ stay, issued in order to permit a related state case to proceed prior to the federal case, could be appealed as a final order. But, Cone makes no reference to Thermtron's holding vis-a-vis ____ _________ remand orders, a circumstance which strongly suggests that the Court viewed the rules pertaining to remands and to stays, respectively, as separate and distinct. Moreover, the Supreme Court has continued to rely on Thermtron in the post-Cone era. _________ ____ See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 347 & ___ ____ _____________________ ______ n.4 (1988). Such continuing reliance indicates that Thermtron is _________ still alive and well. Then, too, our reluctance to find that Cone implicitly overruled Thermtron is sharpened by the fact that ____ _________ Thermtron's "language is rather absolute." Garcia, slip op. at _________ ______ 7. Where the Court has expressed a rule so clearly, inferior courts are entitled to expect equally blunt guidance should the Court wish to retract the rule or declare that it is no longer good law. Cone sends no such signal. ____ Lastly, and relatedly, Thermtron and Cone, scrutinized _________ ____ side by side, highlight certain differences between remand orders and stay orders. Whereas stay orders ordinarily signal a determination that there are federal interests at stake, sufficient ultimately to justify a hearing in federal court, remands, by definition, embody a determination that the cognizable federal interests, if any, when compared to the cognizable state interests, are so lacking in weight that the 10 federal court either does not have, or should not appropriately exercise, jurisdiction. A remanded case's failure to pass a threshold test of this sort might possibly explain why a federal appeal as of right does not attach and the back-up remedy of mandamus is deemed adequate protection. Furthermore, remand orders typically involve a single case that a federal court returns to the state tribunal whence it emanated. Consequently, the litigation continues to progress, albeit in a state rather than a federal forum. In that sense, there is neither a permanent disposition of the case nor a disruption of its progress. A stay, on the other hand, typically involves two separate proceedings, say, one in a state court and one in a federal court. When the federal tribunal stays the latter pending the outcome of the former in state court, res judicata ___ ________ principles make that decision effectively final as to certain aspects of the federal case. See Cone, 460 U.S. at 10-13 & n.11. ___ ____ We think this finality helps to explain why the Court has permitted appeals to be taken from stay orders in situations where remand orders would not be appealable. See In re Amoco ___ ____________ Petroleum Additives Co., 964 F.2d 706, 712 (7th Cir. 1992). And _______________________ we think that this twist affords an added reason why, notwithstanding Cone, Thermtron's holding that a remand order is ____ _________ not a final judgment remains intact. 2. The Collateral Order Doctrine. Next, the 2. The Collateral Order Doctrine. ________________________________ Reinsurers argue that the remand order, even if not a final judgment, may nonetheless be appealable under the collateral 11 order doctrine. That doctrine carves out a "narrow exception to the normal application of the final judgment rule," Midland _______ Asphalt Corp. v. United States, 489 U.S. 794, 798 (1989), limited _____________ _____________ to orders that (1) conclusively determine (2) important legal questions which are (3) completely separate from the merits of the underlying action and are (4) effectively unreviewable on appeal from a final judgment. See Lauro Lines S.R.L. v. Chasser, ___ __________________ _______ 490 U.S. 495, 498 (1989); Cohen, 337 U.S. at 546; In re Insurers _____ ______________ Syndicate, Etc., 864 F.2d 208, 210 (1st Cir. 1988). The ________________ Reinsurers contend that the district court's remand order meets these four preconditions. Once outside the purview of 28 U.S.C. 1447(d), see ___ supra Part II(A), there is no absolute rule either prohibiting or _____ permitting immediate appellate review of remand-related orders under the Cohen rubric. Compare, e.g., Karl Koch Erecting Co. v. _____ _______ ____ ______________________ New York Convention Ctr. Dev. Corp., 838 F.2d 656, 658-59 (2d _____________________________________ Cir. 1988) (permitting review of decision to remand based on interpretation of forum selection clause) with, e.g., Corcoran v. ____ ____ ________ Ardra Ins. Co., 842 F.2d at 35 (dismissing appeal of decision to ______________ remand based on Burford abstention). Rather, courts must apply _______ the multi-pronged Cohen test to each remand order (or, at least, _____ to each type of remand order) in an individualized, case-specific ____ manner. See, e.g., Garcia, ___ F.2d at ___ [slip op. at 8-9] ___ ____ ______ (undertaking case-specific analysis). And, in determining whether a particular remand order falls within or without Cohen's _____ collateral order exception, courts must look to the general 12 circumstances surrounding the order's issuance, including the reasons underlying it. See Travelers Ins. Co. v. Keeling, 996 ___ __________________ _______ F.2d 1485, 1488-89 (2d Cir. 1993); Corcoran, 842 F.2d at 35. ________ The remand order here at issue does not pass muster under Cohen. The salient legal question that stands separate and _____ apart from the merits in this case that is, the "collateral" issue is whether the parties' overall dispute should be resolved in arbitration. The district court's ruling did not conclusively determine this issue. Instead, the district court's order set to rest only the preliminary question of which court should resolve the collateral issue. In other words, the collateral issue remains an open matter a matter that the state court must yet decide. We agree with the Second Circuit that, to come within the collateral order rule, a decree must definitively resolve the merits of the collateral issue, not merely determine which court will thereafter resolve it. See Corcoran, 842 F.2d ___ ________ at 35; see also Bennett v. Liberty Nat'l Fire Ins. Co., 968 F.2d ___ ____ _______ ___________________________ 969, 970-71 (9th Cir. 1992). Determining whether a state or federal court is to resolve an issue constitutes the definitive resolution of a collateral matter only when special circumstances exist, such as when the remand is pursuant to judicial interpretation of a forum-selection provision. See Corcoran, 842 ___ ________ F.2d at 35. That is not the case here. Hence, the order that the Reinsurers contest does not satisfy the first precondition to appealability under the Cohen doctrine. _____ The Reinsurers attempt to subvert this conclusion by 13 redefining the collateral issue. They suggest that the question is not whether the underlying dispute should be resolved in arbitration, but, rather, whether a federal or state court is the proper forum for determining the dispute's arbitrability. We think this argument proves too much. Every remand order conclusively determines which court will thereafter determine the issues in controversy. Thus, appellants' approach could easily expand Cohen beyond the isthmian confines that the Court _____ envisioned, see Cohen, 337 U.S. at 546 (predicting that only a ___ _____ "small class" of cases would be affected by the doctrine), and thereby thwart the strong federal interest in precluding piecemeal appeals. See Coopers & Lybrand v. Livesay, 437 U.S. ___ __________________ _______ 463, 471 (1978); Recticel, 859 F.2d at 1003 & n.3. At any rate, ________ we are skeptical about permitting litigants to avoid Cohen's _____ first prong by the simple expedient of distilling issues to the smallest possible unit of measurement. We, therefore, decline to accept the Reinsurers' attempted reformulation of the collateral issue. See generally Travelers Ins. Co. v. Keeling, 996 F.2d at ___ _________ __________________ _______ 1489 (refusing, in nearly identical circumstances, to redefine the issue in dispute); Corcoran, 842 F.2d at 35 (similar). ________ In all events, we conclude that, whatever way the collateral issue is defined, the remand order is not immediately appealable because it fails another element of the test. Cohen _____ requires that the disputed issue represent "an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion." Boreri v. ______ 14 Fiat S.p.A., 763 F.2d 17, 21 (1st Cir. 1985); accord Insurers ___________ ______ ________ Syndicate, 864 F.2d at 210; United States v. Sorren, 605 F.2d _________ _____________ ______ 1211, 1213 (1st Cir. 1979); see also Lauro Lines, 490 U.S. at 504 ___ ____ ___________ (Scalia, J., concurring) (explaining that the collateral issue must be "sufficiently important to overcome the policies militating against interlocutory appeals"). Although the question, admittedly, is not free from doubt the Convention, after all, contemplates the possibility of removal when a state- court proceeding relates to an arbitration agreement and involves a foreign reinsurer we believe that the Burford-based decision _______ as to which forum, state or federal, will ultimately determine arbitrability lacks the necessary high degree of importance that is demanded. This conclusion is scarcely original. Both the Court, in Thermtron, and the Congress, in enacting 28 U.S.C. _________ 1447, have adumbrated that, absent exceptional circumstances, the determination that one particular court, rather than some other equally qualified court, will adjudicate an issue is not so vital as to outweigh the interests of the parties and of society in the swift, efficient administration of justice. Indeed, Thermtron _________ and section 1447 serve as vivid reminders that, when remand is at stake, the policies militating against interlocutory appeal possess their full vigor. See generally 14A Charles A. Wright, ___ _________ et al., Federal Practice and Procedure 3740 (1985 & Supp. _______________________________ 1993). We hold, therefore, that an order to remand premised on Burford abstention is not immediately appealable under the Cohen _______ _____ 15 rubric. In reaching this result, we find ourselves in agreement with the Second Circuit. See Corcoran, 842 F.2d at 35. We ___ ________ expressly decline to extend the Fifth Circuit's decision in McDermott Int'l v. Lloyd's Underwriters, 944 F.2d 1199, 1203 & _______________ ____________________ n.5 (5th Cir. 1991), beyond the facts there presented.4 When all is said and done, in this case, as in Garcia, ___ F.2d at ___ ______ [slip op. at 9], "we cannot find a `collateral order' exception large enough to fit our case that does not swallow up (and thereby simply disregard) the general rule." 3. The Federal Arbitration Act. The Federal 3. The Federal Arbitration Act. ______________________________ Arbitration Act is the last source of the Reinsurers' effort to ____________________ 4While we are comfortable with the result in McDermott, _________ given its facts, some of the language contained in the opinion is potentially mischievous. With respect, we think the court overgeneralized by failing to distinguish between cause and effect. McDermott properly found the district court's remand _________ order to be appealable under the collateral order doctrine, but this outcome is not dictated merely because the remand order had the "effect [of] allow[ing] a state court to decide the question ______ of arbitrability." McDermott, 944 F.2d at 1203 (emphasis _________ supplied). Rather, the question of where the parties' dispute regarding arbitration was to be resolved constituted a collateral issue because the parties had jointly made it a collateral issue, i.e., they had included a service-of-suit clause in the contract ____ and the court based the remand on its substantive interpretation of that provision. See id. at 1201. The mere fact that a remand ___ ___ order has the effect of deciding that issues are to be resolved in a state court does not mean that, in every case, the identity of the forum is a collateral issue within the ambit of Cohen. _____ See Corcoran, 842 F.2d at 35. After all, remand orders always ___ ________ cause the disputed issues to be determined in state court; and McDermott's reasoning, applied across the board, would make _________ virtually all remand orders (save only those which are subject to ___ the statutory bar, see supra Part II(A)) appealable collateral ___ _____ orders a position to which we cannot subscribe. 16 generate an adequate jurisdictional showing.5 The Act provides, inter alia, that an appeal may be taken from an order refusing a _____ ____ stay pending arbitration or denying a motion to compel arbitration. See 9 U.S.C. 16(a)(1)(A), (C) (Supp. V 1992). ___ Here, the district court, after remanding the case, stated that it was denying appellants' motions to compel arbitration and stay the litigation, without prejudice. The Reinsurers endeavor to appeal from these "denials." We are unimpressed. We think it is evident that the district court, having indicated its intention to remand the case to state court, added the "denied without prejudice" language merely as a way of flagging that it intended the arbitrability issue to be decided in a state court and that the federal court, in remanding, took no view of arbitrability. The district court's remarks, then, did not deal with the merits of the arbitration question and were not arbitrability denials of the sort that the Federal Arbitration Act makes immediately appealable. Compare Asset _______ _____ Allocation & Management Co. v. Western Employers Ins. Co., 892 ____________________________ ___________________________ F.2d 566, 574 (7th Cir. 1989) (finding district court's order appealable under Federal Arbitration Act) with Jeske v. Brooks, ____ _____ ______ 875 F.2d 71, 73 (4th Cir. 1989) (finding district court's order inappropriate for appeal). To hold otherwise would be ____________________ 5We need not consider whether the Enelow-Ettelson doctrine, _______________ see Enelow v. New York Life Ins. Co., 293 U.S. 379 (1935); ___ ______ _________________________ Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188 (1942), ________ ____________________________ might make the remand order immediately appealable under 28 U.S.C. 1292(a)(1). The Court has overruled that line of cases. See Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, ___ __________________________ _______________ 279-88 (1988). 17 mechanically to elevate form over substance, a practice that we have consistently spurned. See, e.g., United States v. Branble, ___ ____ _____________ _______ 925 F.2d 532, 534 (1st Cir. 1991); Maine v. Thomas, 874 F.2d 883, _____ ______ 886 (1st Cir. 1989). The Reinsurers cannot achieve a different result even if the district court acted with a more meddlesome intent. Once it remanded the case to a state forum, the district court lost jurisdiction over the case and, therefore, lacked the authority to issue substantive orders of the sort that the Reinsurers suggest were issued here. See, e.g., In re La Providencia Dev. ___ ____ __________________________ Corp., 406 F.2d 251, 252-53 (1st Cir. 1969); see also General _____ ___ ____ _______ Elec. Co. v. Byrne, 611 F.2d 670, 672-73 (7th Cir. 1979) (per __________ _____ curiam) (stating that a "transfer order deprives the transferor court of jurisdiction until the case is returned to it"); cf. ___ Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 445 (9th _____ _______________________________ Cir. 1992) (holding that a district court possessed the authority to award attorneys' fees after remanding only because the award of fees was specifically authorized by the remand statute and was, therefore, "collateral to the decision to remand"); In re ______ Spillane, 884 F.2d 642, 645-46 (1st Cir. 1989) (similar, but in ________ venue-transfer context). Put another way, absent an emergency or some other extraordinary circumstance, the district court could only have issued substantive orders necessary to reaching the decision to remand.6 See, e.g., Karl Koch, 838 F.2d at 659 ___ ____ __________ ____________________ 6The court's power to issue such orders is derivative of, and implicit in, its power to remand. 18 (remanding because court interpreted a forum-selection provision as requiring parties to litigate in state court); Pelleport _________ Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, _______________ _____________________________ 275 (9th Cir. 1984) (similar). In the last analysis, whether or not we construe the district court's remarks as rulings, the bottom line is unaffected: the denials have no legal effect aside from making clear the dimensions of the issues that the court proposed to leave unadjudicated. 4. Summary. To recapitulate, under the circumstances 4. Summary. _______ of this litigation, the district court's remand order is not a final judgment; it is not an appealable collateral command; and its accouterments are not appealable under the Federal Arbitration Act. Because the Reinsurers have been wholly unable to demonstrate a cognizable hook on which appellate jurisdiction may be hung, their appeal must be dismissed for want of jurisdiction.7 III. THE PETITION FOR MANDAMUS III. THE PETITION FOR MANDAMUS Anticipating problems in topping the jurisdictional hurdles, the Reinsurers also seek to proceed by way of mandamus. They ask that we issue a writ requiring the district court to vacate the remand order, accept jurisdiction over the case, compel arbitration of a portion of the underlying dispute, and ____________________ 7Inasmuch as we hold that there is no affirmative source conferring jurisdiction over the appeal essayed by the Reinsurers, we need not address any of Doughty's other challenges to this court's appellate jurisdiction. 19 stay proceedings as to the remainder. We see no reason to honor the request. Although federal appellate courts have power to issue prerogative writs that are "necessary or appropriate in aid of their . . . jurisdiction[]," 28 U.S.C. 1651(a) (1988), that power must be used stintingly and brought to bear only in extraordinary situations. See Allied Chem. Corp. v. Daiflon, ___ ___________________ ________ Inc., 449 U.S. 33, 34 (1980) (per curiam); Recticel, 859 F.2d at ____ ________ 1005. Thus, prerogative writs, although frequently sought, are seldom issued. To succeed in the hunt, a writ-seeker usually must demonstrate that the challenged order is palpably erroneous and that he faces some special risk of irreparable harm.8 See ___ In re Pearson, 990 F.2d 653, 656 & n.4 (1st Cir. 1989) _______________ (collecting cases). Given the stringency of this standard, it is unsurprising that "[i]nterlocutory procedural orders . . . rarely will satisfy th[e] precondition for mandamus relief." Recticel, ________ 859 F.2d at 1006; accord Pearson, 990 F.2d at 656. We explain ______ _______ briefly why this case is no exception to the rule. In the first place, "mandamus [generally] will not issue to control exercises of discretion." Recticel, 889 F.2d at ________ 1006; accord DeBeers Consolidated Mines, Ltd. v. United States, ______ ________________________________ _____________ 325 U.S. 212, 217 (1945); In re Bushkin Assocs., Inc. 864 F.2d ____________________________ ____________________ 8We have, on infrequent occasions, relaxed these requirements and exercised our powers of "advisory mandamus" when matters of great public import are involved. See In re Justices ___ ______________ of the Supreme Court of Puerto Rico, 695 F.2d 17, 25 (1st Cir. _____________________________________ 1982). The Reinsurers have not urged us to use advisory mandamus here and, at any rate, this is plainly not a suitable case. 20 241, 245 (1st Cir. 1988). Burford-based abstention decisions, _______ while more closely cabined under the current legal regime, see, ___ e.g., Fragoso, 991 F.2d at 883-86, still contain a discretionary ____ _______ element. See, e.g., General Glass Indus. Corp. v. Monsour ___ ____ ____________________________ _______ Medical Found., 973 F.2d 197, 203 (3d Cir. 1992): New Orleans ______________ ____________ Pub. Serv., Inc. v. New Orleans, 798 F.2d 858, 862 (5th Cir. _________________ ____________ 1977); Richardson v. City, Etc. of Honolulu, 759 F.Supp. 1477, __________ _______________________ 1483 (D.Haw. 1991). It follows that, to the degree the district court understood controlling abstention law and exercised its discretion within that known law, this case is a poor candidate for mandamus relief. See Bushkin, 864 F.2d at 245 (explaining ___ _______ that "mandamus is generally thought an inappropriate prism through which to inspect exercises of judicial discretion"). Even misuses of discretion will not provoke mandamus relief _______ absent a clear usurpation of power or some similarly egregious circumstance. See id. ___ ___ In the second place, we cannot say that the district court's decision in this case represents a palpably erroneous application of Burford abstention law. Although the radius of _______ permissible Burford abstention has shrunk in recent years, see _______ ___ New Orleans Pub. Serv., Inc. v. City Council of New Orleans, 491 _____________________________ ___________________________ U.S. 350, 360-64 (1989); Fragoso, 991 F.2d at 882-86, this _______ litigation involves a number of novel questions, including whether the complex system Massachusetts has enacted for the liquidation of domestic insurance companies is the sort of scheme that warrants serious consideration as a basis for abstention. 21 After reviewing the record, we can say only that the district court's Burford-based decision is possibly erroneous not that _______ it is palpably so. That is not enough to satisfy the customary precondition for mandamus relief. See Bushkin, 864 F.2d at 245. ___ _______ And, moreover, mandamus seems an awkward vehicle for resolving the doubtful issues that permeate the Burford equation. See _______ ___ Amoco Petroleum, 964 F.2d at 713 (collecting cases); Corcoran, _______________ ________ 842 F.2d at 36-37 (declining, in similar circumstances, to issue a writ of mandamus). We note, too, that the record reveals several potential non-Burford-based reasons for remanding this case which, on the _______ surface, appear to possess merit. It is a prerequisite to mandamus relief that the ruling below be "palpably improper," LaBuy v. Howes Leather Co., 352 U.S. 249, 256 (1957), and that a _____ _________________ suitor's entitlement to the claimed relief be plain as a matter of law, Pearson, 990 F.2d at 657 & n.4. We do not believe these _______ criteria are satisfied if the disputed disposition, albeit premised on a doubtful ground, is nevertheless probably sustainable on an alternative ground. The case before us illustrates the point: whatever may be said of the district court's Burford rationale, the outcome of the federal _______ adjudicative process retransmitting the litigation to the state court cannot by any stretch be classified as palpably erroneous. Also, we descry no special risk of irreparable harm. The Reinsurers' rhetoric does not change the fact that the remand 22 order leaves the issue of arbitrability unresolved. The state court will decide that issue, and the Reinsurers will have rights to appeal within that system should they so elect. While the Reinsurers may prefer that a federal forum determine the result, they have offered no reason why the frustration of this preference is likely to cause irreparable harm. Cf., e.g., ___ ____ Garcia, ___ F.2d at ___ [slip op. at 10] (finding mandamus ______ appropriate where a "critical legal determination" would, following remand, be insulated from "meaningful review"). There is an overriding consideration that touches upon all the above. A court that is asked to issue a writ of mandamus is itself invested with considerable discretion. See Kerr v. ___ ____ United States District Court, 426 U.S. 394, 403 (1975). Given _____________________________ the facts and posture of this dispute, the wise exercise of judicial discretion strongly favors continuing to employ mandamus sparingly, Recticel, 859 F.2d at 1005; see also Boreri, 763 F.2d ________ ___ ____ ______ at 26 (warning that "the currency [of mandamus] is not profligately to be spent"), and allowing this case to proceed in state court. The Convention, which is the sole source of ostensible federal jurisdiction, applies neither to the numerous reinsurance contracts that do not contain arbitration clauses nor to those underwritten by the several domestic insurance providers. Most of the years in controversy are years in which the reinsurance arrangements are not even arguably affected by arbitration clauses. The net result is that, should we heed the Reinsurers' pleas, the litigation would be split between federal 23 and state court. Further, the crux of the controversy involves the contested interpretation of contract provisions presenting chiefly matters of state law. Claims have also been brought under Massachusetts unfair trade practice statute. The larger context in which the litigation is set concerns the business of insurance, which the McCarran-Ferguson Act, 21 U.S.C. 1012 (1988), unequivocally declares to be a state-law preserve. The Commonwealth, through its Insurance Commissioner, is a real party in interest. In all, it likely understates the obvious to acknowledge that "state issues substantially predominate." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 _________________________________ _____ (1966). When these features are coupled with the host of significant questions concerning the propriety of the removal order, it would be rashly injudicious for us to exercise our discretion to sponsor mandamus, thereby wresting the suit from its natural habitat and abetting its balkanization. We need go no further. It is apodictic that "[m]andamus cannot be allowed to become a handy substitute for an otherwise unavailable interlocutory appeal." Bushkin, 864 F.2d _______ at 265. Thus, a party seeking the issuance of a prerogative writ bears a heavy burden. The Reinsurers have neither carried this burden nor persuaded us that we should gratuitously oust the state court of jurisdiction over part of the litigation, leaving the remainder to linger there. The petition for mandamus must, therefore, be denied. 24 IV. CONCLUSION IV. CONCLUSION To summarize, although the statutory bar, 28 U.S.C. 1447(d), does not pertain, the Reinsurers cannot clear the other jurisdictional hurdles that dot the path to federal appellate relief. We lack jurisdiction over their appeal and we also lack a cognizable basis for issuing a prerogative writ. The appeal is dismissed for want of appellate _______________________________________________________ jurisdiction. The petition for issuance of a writ of mandamus is ____________ __________________________________________________ denied. Costs are to be taxed in favor of respondent-appellee. ______ _____________________________________________________ 25